## SCULL, ET AL. *v.* MONTGOMERY CITIZENS LEAGUE, ET AL.

[No. 363, September Term, 1967.]

---

5. For definitions of "rule" and "contested case," see Maryland Code (1965 Repl. Vol.) Art. 41, §§ 244(b), (c).

*Decided March 8, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*David L. Cahoon, County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* with whom were *Charles G. Dalrymple* and *Stanley D. Abrams, Assistant County Attorneys,* on the brief, for appellants.

*Joe M. Kyle,* with whom was *Kyle & Jergensen* on the brief, for appellees.

Amicus curiae brief filed by Suburban Maryland Fair Housing, Inc., et al. *Phineas Indritz, Thomas J. Schwab, Elihu I. Leifer* and *George B. Driesen* on the brief.

HAMMOND, C. J., delivered the opinion of the Court.

The Charter of Montgomery County provides, as Art. XI-A of the Constitution of Maryland entitled "Local Legislation" requires, for an elected Council which sits for a specified time each year to enact laws for the County. The Charter also provides, as Art. XI-A permits, that the Council is to act as the Chief Executive authority of the County.

On July 20, 1967, the Council, sitting in executive session, adopted Ordinance 6-42, entitled "Fair Housing" effective August 19, 1967, to prohibit discrimination in the sale, lease, rental and financing of residential housing on the basis of race, color, creed, ancestry or national origin. On August 23 the appellees filed suit in the Circuit Court against the Council and other interested agencies and officials, alleging the ordinance to be invalid for various reasons, including (a) the allegations that it unconstitutionally deprived them of "freedom to contract," and abridged their liberty and property protected by the Four-

teenth Amendment, as well as their freedom of speech protected by the First Amendment; and (b) the final allegation that the ordinance, if it could constitutionally be enacted at all, could be enacted only by the Council while sitting in legislative session and could not be adopted in the executive session of the Council, as it was.

Judge Shook dealt with and decided only the question of the legality of the procedures of enactment of the ordinance, holding that the Council lacked the power to pass the ordinance in executive session. We agree with Judge Shook's determination and, even as she did, find no need to go into questions of constitutionality or construction and express no opinion on those points.

The purpose of Art. XI-A, to take from the General Assembly and give to counties which became chartered the exclusive power to enact local laws, was referred to in *State v. Stewart,* 152 Md. 419, and the Charter which Montgomery County adopted in 1948 was discussed and passed on in part in *Schneider v. Lansdale,* 191 Md. 317 (*Schneider*), which held that the traditional and long exercised power of the County Commissioners to adopt budgets and levy taxes was not a legislative power within the meaning of Art. XI-A. The two main reasons for local home rule were to reduce or eliminate the log jam of unacted on measures in the late days of the legislative sessions, which had resulted in passage of laws that had not received proper scrutiny or due consideration and to permit local legislation to be enacted solely by those directly affected by it without interference by representatives from other sections of the State.

In deciding the question before us, there must be read and considered together Art. XI-A, the Charter of Montgomery County, and the Act (now Art. 25A of the Code) which granted express powers to chartered counties as Sec. 2 of Art. XI-A demanded (Sec. 4 of Art. XI-A forbids the legislature to enact a public local law "on any subject covered by the express powers granted" as Sec. 2 required).

Section 3 of Art. XI-A provides that every charter formed under Sec. 1:

"shall provide for an elective legislative body in which

shall be vested the law-making power of said City or County. * * * From and after the adoption of a charter by * * * any County of this State, as hereinbefore provided, * * * the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said * * * County including the power to repeal or amend local laws of said * * * County enacted by the General Assembly, upon all matters covered by the express powers granted as above provided; * * * Provided, however, that the charters for the various Counties shall specify the number of days, not to exceed forty-five, which may but need not be consecutive, that the County Council of the Counties may sit in each year for the purpose of enacting legislation for such Counties, and all legislation shall be enacted at the times so designated for that purpose in the charter [*Schneider* said, page 327 of 191 Md.: "Those who framed the amendment were fearful of a lawmaking body in continuous session and therefore the new authority to legislate was carefully restricted"], and all laws and ordinances so enacted shall be published once a week for three successive weeks in at least one newspaper published in such Counties, so that the taxpayers and citizens may have notice thereof."

Section 5 (A) of Art. 25A (the Express Powers Act) gives the elected legislative body of a chartered county the power:

"To enact local laws for such county, including the power to repeal or amend local laws thereof enacted by the General Assembly upon the matters covered by the express powers in this article granted * * *."

Section 5 (S) authorizes the amendment of the county charter by the voters, and adds:

"The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the

provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, *as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.* (Emphasis added.)

"Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law * * *."

The appellants find authority and basis for enacting the ordinance here involved during the executive sessions of the County Council in (a) Ch. 947 of the Laws of 1945, which survived the adoption of the Charter and now in general substance is Sec. 2-23 of the Montgomery County Code (1965), and (b) the practice since the Charter became operative in 1949 of enacting ordinances in executive session.

Chapter 947 added a new section (Sec. 185A) to Art. 16 of the Code of Public Local Laws (Montgomery County) (1939 Ed.), providing:

"The Board of County Commissioners of Montgomery County in its discretion shall have full powers and authority to enact *ordinances* for said County as it may deem necessary *for the peace, good government, health, safety, or welfare of said County,* and which are not inconsistent with the provisions of the Constitution or public general laws or public local laws of the State of Maryland * * *." (Emphasis added.)

The section went on to provide that "no ordinance of general application shall be enacted or adopted * * * under the powers conferred by this Act" until published in a newspaper of general circulation in the County "at least once a week for two weeks, with an opportunity for public hearing thereon * * *" (the Council eliminated this requirement when it made the substance of Ch. 947 a part of the County Code). The Act concluded that:

"the powers of ordinance, created by this Act are in addition to and not in substitution nor in derogation

of the legislative jurisdiction of the General Assembly of Maryland and that such supplemental powers of ordinance as are herein delegated to the County Commissioners of Montgomery County shall not be construed to include power to repeal or to amend as to their general purpose or intent any Act of the General Assembly by any such ordinance."

The argument on Ch. 947, now Sec. 2-23 of the County Code, comes down to the contention that only public local laws which prior to the Charter only the legislature could have passed are required to be enacted in legislative session and that anything the County Commissioners could have ordained, promulgated, ruled, regulated or adopted now may be similarly done by the Council in executive session.

The argument as to contemporaneous and continued administrative practice is based on the fact that at the first legislative session of the new County Council in May 1949 there was enacted a public local law to :

"Provide for the Adoption of Building, Fire, Electrical, Plumbing, Trash Removal, Billboard, Street Construction, and Other Codes, and for the Administration and Enforcement of Such Codes and of Zoning and Subdivision Regulations and Ordinances, and for the Procedure for Adoption of Certain Rules, Regulations, Standards and Ordinances."

This local law specified that the Council, from time to time, "in open Executive Session" could adopt "rules, standards, regulations, or ordinances, or amendments thereto" as authorized by "this Act." It is stipulated that similar "enabling acts" have been enacted by various subsequent councils, and the County contends further that consistently the various councils sitting in executive sessions have ordained on various subjects, even though the action taken had not previously been authorized by a law enacted at a legislative session and was not administrative or executive in nature and character, but purely legislative.

Both of appellants' arguments collapse when subjected to the

revealing light which Art. XI-A, the Charter, and the Express Powers Act focus on them.

Section 3 of Art. XI-A requires in a charter provision for "an elective *legislative* body in which shall be vested *the* law-making power" of the County. The Charter must:

> "specify the number of days, not to exceed forty-five, which may but need not be consecutive, that the County Council * * * may sit in each year *for the purpose of enacting legislation* * * *, and *all* legislation shall be enacted *at the times so designated for that purpose* in the charter, and *all laws and ordinances* so enacted shall be published once a week for three successive weeks in at least one newspaper * * *." (All emphasis added.)

It is to be noted that *"all"* legislation is to be enacted in legislative session and at the appointed time.

Section 3 of Art. XI-A also provides that:

> "the chief executive officer, if any such charter shall provide for the election of such executive officer, or the presiding officer of said legislative body, if such charter shall not provide for the election of a chief executive officer, shall be known * * * in any County as the President of the County Council of the County, and all references in the Constitution and laws of this State * * * and to the County Commissioners of the Counties, shall be construed to refer * * * to the President and County Council herein provided for whenever such construction would be reasonable."

Article II of the Charter, "The Legislative Branch," provides in Sec. 1, "Composition," that "the legislative branch of the county government shall be composed of the county council in legislative session and the officers and employees thereof."

Section 3, "General legislative powers," reads:

> "The county council is the elective legislative body of the county and is vested with the law-making power thereof including all law-making powers heretofore exercised by the General Assembly of Maryland but

transferred to the people of the county by virtue of the adoption of this Charter, and the legislative powers vested in the county commissioners as a district council for the Montgomery County Suburban District. For the enactment of legislation the county council shall sit in legislative session during May of each year." [1]

Section 6 of Art. II of the Charter gave a right of referendum, something Art. XI-A does not require in a charter. The people reserved the right to vote on public local laws on specified matters and on "(3) Any other public local law or any part of any other public local law not included under subsections (1) and (2) above."

Montgomery County's charter did not provide for an elected chief executive. Rather, it conferred upon the County Council not only the legislative power which Art. XI-A demands but also the executive functions of government.

Article III of the Charter, "The Executive Branch," provides in Sec. 1, "Composition," that:

"The executive branch of the county government shall be composed of the county council in executive session, the county manager, the heads of the several departments of county government, the county personnel board, the office of the county attorney, and other administrative agencies of the county government."

Section 2, "General executive powers," provides that:

"The county council is the chief executive authority of the county and is vested with the executive power

1. The Charter was amended by vote of the county voters on November 8, 1966, to change the legislative session from May to "from the 5th day of January through the 3rd day of February of each year." The amendment also provided:

"If the Council, by a resolution approved by a majority vote of its members declares a need for an emergency extra session or sessions, such extra session or sessions may be held in addition to the aforementioned legislative session for a total period which does not exceed fifteen days. The said fifteen days may or may not be consecutive and may consist of one or more sessions."

thereof and constitutes the county commissioners thereof. For the exercise of such powers the county council shall sit in executive session at least once in each calendar month and at such other times as it may determine. The executive sessions of the county council shall be open or closed to the public from time to time as the county council may determine."

Section 3, "Specific executive powers," provides that:

"The county council shall have power in executive session to:

(a) Exercise all powers, *except powers to enact legislation,* heretofore or hereafter:

(1) Vested in the county council pursuant to the requirement of Article XI-A of the Maryland Constitution that all references in the Constitution and laws of the state to county commissioners shall be construed to refer to the county council whenever such construction would be reasonable, including all powers of the board of county commissioners, or any of them, as a local board of health or as a district council or otherwise to adopt and prescribe policies, rules, regulations, and ordinances under health, sanitation, zoning, Montgomery County Suburban District, and other laws.

(2) Otherwise vested in the county council, the board of county commissioners for Montgomery County, or any of them by the Maryland Constitution, public general laws, or other law, or vested in the county council by this Charter.

(b) Adopt expense and capital budgets as provided in this Charter.

(c) Prepare and hold hearings on a legislative program to be considered by the county council in legislative session.

\* \* \*

(f) Establish by resolution general policies, orders, or instructions in conformity with law for administer-

ing the functions of the executive branch." (Emphasis added.)

Section 4, "Veto," provides that:

"to guard against hasty legislation and afford the people of the county adequate opportunity to express their will, no bill shall become law until the 15th day of August following the close of the legislative session. * * * Prior to such date the county council in executive session shall have the right as the chief executive authority of the county * * * to veto a bill and if vetoed the bill shall not become law."

The plan and language of the Charter as a whole, read with Art. XI-A, leave no doubt in our minds as to the intent and meaning of its provisions in regard to legislation and administration, respectively. Article XI-A, Sec. 3, provides for the elected *legislative* body in which shall be vested *the* law-making power of the County. The Charter clearly expressed this mandate. Article II, Sec. 1, makes the Council "in legislative session" the body in which is vested exclusively the law-making power of the County, as Sec. 3 spells out when the law-making body is to have "all law-making powers," including that previously exercised by the General Assembly and also the *"legislative powers* vested in the county commissioners as a district council for the Montgomery County Suburban District" (emphasis added)—such legislative power to be exercised only during May (now January 5 to February 3) "of each year."

That the Council is the supreme collective executive of the County is put beyond question by Art. III, Sec. 2, of the Charter, which says: "The county council is the chief executive authority of the county and is vested with the executive power thereof and constitutes the county commissioners thereof" (Sec. 4 refers to the Council in executive session as "the chief executive authority of the county"). In this framework and context the equating of the Council in executive session to the County Commissioners means to us unambiguously that the Council in executive session has and may exercise the administrative and executive powers the County Commissioners had and may implement and facilitate and insure the proper execu-

tion of laws and ordinances passed by the Council in legislative sessions by resolutions, policies, rules, regulations or ordinances, as the County Commissioners could have done in regard to public local laws passed by the General Assembly. That the Council in executive session is to have no power to make law as such is made clear by and emphasized in various provisions of the Charter. In addition to those in Art. II, Sec. 3 of Art. III expressly denies law-making power to the Council when it sits in executive session, saying: "The county council shall have power in executive session to: (a) Exercise all powers, *except powers to enact legislation* * * *." (Emphasis added.) Paragraph (a) gives the executive branch the non-legislative powers the County Commissioners had "as a local board of health or as a district council," the power to adopt expense and capital budgets (a non-legislative power under *Schneider*), and the power to "prepare and hold hearings on a legislative program to be considered by the county council in legislative session," a provision which strongly suggests, if it does not compel, the conclusion that the Council's concern with law-making while it sits in executive session is to hear, consider, and recommend to the legislative branch, not to enact proposed laws. Finally, in Sec. 4 the Council as executive is given power to veto laws passed by the legislative branch, a power essentially executive.

The distinction made and the compartmentalization insured by the Charter between legislation on the one hand and administration and execution on the other is a distinction that has been acknowledged and acted upon by legislative bodies and the courts of other States. A recognized test for determining whether a municipal ordinance is legislative and so subject to referendum, or whether it is executive or administrative and is not, is whether the ordinance is one making a new law—an enactment of general application prescribing a new plan or policy— or is one which merely looks to or facilitates the administration, execution or implementation of a law already in force and effect. *Kelley v. John,* 75 N. W. 2d 713, 715 (Neb. 1956) (comprehensive zoning plan); *Keigley v. Bench,* 89 P. 2d 480, 483-85 (Utah 1939); *Blankenship v. City of Richmond,* 49 S. E. 2d 321, 323-25 (Va. 1948) (ordinance regulating the use of property); *Vanmeter v. City of Paris,* 273 S. W. 2d 49, 50

(Ky. 1954); *Bachmann v. Goodwin,* 3 S. E. 2d 532 (W. Va. 1939) (repeal of a public housing authority).

The County's contention that, because the County Commissioners had been given power in 1945 by Ch. 947 of the Laws of that year to enact ordinances they deemed necessary "for the peace, good government, health, safety or welfare," a power coexistent with and subservient to the inherent power of the legislature in the same field, and a power they exercised from 1945 to 1949 when the Charter became operative, the Council in executive session succeeded to this power and can ordain to the same extent as could have the Commissioners, begs the question. The theory is that under statements in *Schneider* the exclusive power of local law-making given the Council sitting in legislative session was only the new power of the County to step into and wear the public local law shoes of the General Assembly insofar as Montgomery County was concerned —the exclusive new power to enact, amend and repeal such laws on matters covered by the Express Powers Act.

The theory cannot stand analysis. As *Schneider,* at page 326 of 191 Md., said of the two main purposes of Art. XI-A:

> "Power could have been granted by a simple Act of Assembly (*Gordon v. Montgomery Co.,* 164 Md. 210, 164 A. 676; Act 1947, Ch. 730, Code 1947 Supp., Art. 25, Secs. 2A, 2B, and 2C), but in order to confine that power, when availed of, to the local authorities, it was necessary to prohibit its further exercise by the Legislature, and this could be done only by a constitutional amendment."

Chapter 947 of the Laws of 1945 used the "simple act of assembly" method by authorizing the County Commissioners of Montgomery County to legislate generally (with the limitations that they could not deal with alcoholic beverages or authorize indebtedness of the County), subject to the expressly reserved and continuing inherent and paramount power of the General Assembly to pass public local laws as to any matters on which the County Commissioners could legislate. It seems apparent that the "new power" to enact, amend and repeal public local laws on matters covered by the Express Powers Act

which Art. XI-A took from the legislature and gave the County, when it adopted a Charter, included the legislative powers the County Commissioners had shared with the legislature from 1945 to 1949. The Express Powers Act emphasizes this when it says in Art. 25A, Sec. 5 (S) that the powers which a chartered county can exercise include the power to pass such ordinances "as may be deemed expedient in maintaining the peace, good government, health and welfare of the county [except as to malt and spiritous liquors]." Apart from Ch. 947 (now Sec. 2-23 of the County Code), the Council was given the power to exercise the police power (essentially the power to govern)—but Art. XI-A, the Charter, and the Express Powers Act make it clear that if the exercise is legislative, as it is in the case before us, the exercise must be by the Council in legislative session.

The County gains no ground when it claims that the Council as a legislature enacts laws and the Council as an executive ordains ordinances, and that the Fair Housing enactment is an ordinance. Article XI-A contemplated that some of the laws passed by the Council in legislative session would be ordinances saying in Sec. 3 that the Charter must specify the number of days in each year (not exceeding forty-five) the Council would sit "for the purpose of enacting legislation * * *, and *all* legislation shall be enacted at the times so designated for that purpose * * *, and *all* laws and *ordinances* so enacted shall be published * * *." (Emphasis added.)

*Schneider,* at page 328 of 191 Md., said: "The restrictions were intended to apply to the exercise of the power of local legislation, whether such exercise was by an enactment called a 'law' or by one termed an 'ordinance.'"

If an ordinance brings into being a law as distinguished from ordaining an implementation or the administration or execution of an existing law, it must be passed at a legislative session of the Council. An ordinance which purports to bring into being a law, as the Fair Housing Ordinance does, cannot be validly or effectively adopted by the Council in executive session, and if the Council as executive attempts to do what it lacks the power to do, its product, although in form a law, is null and void. See *Montgomery County v. Garrott,* 243 Md. 634, 642-43, in which we held:

"It is clear, however, that the Council is a political creature of delegated powers, that it can effectively act only within the limits of the powers delegated to it by the Constitution and the Legislature, *Ames v. Supervisors of Elections,* 195 Md. 543, 551, and that it did not respect the limits and bounds imposed on it when it failed to act in legislative session and evaded both the August 15th effective-date provision and the submission of the proposed changes to the voters of the County at the next general election."

The County's reliance on contemporaneous and continued administrative construction is misplaced for several reasons. The basic document is Art. XI-A of the Constitution, which was adopted in 1915. What the County Council of Montgomery County did under its Charter based on Art. XI-A from 1949 on cannot fairly be said to be a contemporaneous construction of Art. XI-A, at least. It is of more fundamental significance that we find nothing ambiguous or uncertain, nothing requiring construction, as to the point before us, in Art. XI-A, the Charter, and the Express Powers Act, read together. This being so, the words of these controlling constitutional and statutory provisions will be given the definite and sensible meaning they have on their face, as the meaning the legislature and the people intended them to have. *Comptroller v. A. Cyanamid Co.,* 240 Md. 491, 506-07, and cases cited; *Stembler v. Capitol Heights,* 221 Md. 113, 117; and *County Treas. v. State Tax Comm'n,* 219 Md. 652, 657. As this Court said in *Bouse v. Hutzler,* 180 Md. 682, at 687:

"No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purpose of a statute. An administrative practice contrary to the plain language of a statute is a violation of the law; and a violation of the law, even though customary, does not repeal the law."

In *Hunt v. Montgomery County,* 248 Md. 403, 414-15, we said:

"If the words of a statute, giving their normal meaning, are plain and sensible the legislature will be pre-

sumed to have meant the meaning the words import. The court will not substitute for literal intent a real intent unless the literal words of a statute say something the legislature could not possibly have meant. *Amalgamated Ins. v. Helms,* 239 Md. 529, 535. Rules and methods of construction and interpretation, including legislative history and administrative practice, are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it."

We find that the Fair Housing Ordinance is invalid and ineffective because it was not the product of the County Council in legislative session. Our opinion and holding go no further.

*Decree affirmed, with costs.*