SCHREMP, ET UX. *v.* DUBROWIN, ET UX.

[No. 339, September Term, 1969.]

*Decided April 9, 1970.*

624

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Robert A. Schremp in proper person.

*Charles E. Hogg* for appellees.

BARNES, J., delivered the opinion of the Court.

On April 10, 1964, S. Ralph Dubrowin and Frances L. Dubrowin, his wife, instituted a suit against Robert A.

Schremp and Gladys E. Schremp, his wife, in the Circuit Court for Howard County. In their bill of complaint, the Dubrowins alleged that they are entitled to use an entrance roadway, located in part on the adjoining property of the Schremps, jointly with the Schremps as "an easement appurtenant to their respective properties." The Dubrowins further alleged that the Schremps had denied them the use of this roadway. The bill of complaint asked the court for injunctive relief and damages. The Schremps, thereafter, filed a cross-bill of complaint against the Dubrowins, asking that the Dubrowins be enjoined from trespassing on the part of the entrance roadway over the Schremp property and from interference with the Schremps' use and improvement of their reserved right-of-way over the entrance roadway. The decision by the lower court, holding for the Schremps on the theory that the Dubrowins had no more than a mere license to use the roadway on the Schremp property and that this license had been revoked, was reversed in part by this Court on appeal and remanded for further proceedings. Judge Singley, speaking for the Court, stated that there remained to be resolved by competent testimony whether Mr. Schremp had in fact assented to the alleged easement across his property by a letter he wrote to the Dubrowins, dated January 29, 1954, and whether he was empowered as Mrs. Schremp's agent to charge her interest in the property as well. *Dubrowin v. Schremp,* 248 Md. 166, 235 A. 2d 722 (1967).

Upon remand to the lower court (Macgill, C.J.), further testimony was taken in accordance with this Court's instructions. At the close of the taking of this new evidence, Judge Macgill had before him certain undisputed facts. On May 17, 1952, the Schremps contracted to sell the Dubrowins 35 acres of a 52 acre tract that the Schremps owned in Howard County. Included in the contract was a provision which stated:

"2) The Sellers and the Purchasers agree to share equally the expense of constructing an en-

trance from Haviland's Mill Road over Parcel A [Dubrowin purchase] and along the North boundary line of said parcel to a point where the said newly constructed road intersects and joins with the now existing road on the property of the Sellers. It is understood and agreed that the Sellers will not be required to pay more than One Hundred ($100) Dollars toward the cost of the construction of this new road. From the point where the newly constructed road intersects with the now existing road, the North boundary line of Parcel A shall be the North side of the said existing road. The deed of conveyance will reserve a right of way to the Sellers, their heirs and assigns, over the newly constructed road and the now existing road which is contained in Parcel A; and said right of way shall be a fifteen (15) foot right of way."

A deed was executed in August of 1952 but because of certain errors in the property description, the parties deemed it necessary to execute a confirmatory deed. After a new survey in May of 1953, the confirmatory deed was prepared, properly executed by the mortgagee, of all 52 acres of the Schremp property in December of 1953, and delivered into the possession of the Schremps, then living in Ambler, Pennsylvania. At a later date this confirmatory deed, containing a reservation similar to the right-of-way provision already referred to in the contract of sale, was executed by the Schremps and later recorded.

In addition to the above undisputed facts, Judge Macgill had before him the often conflicting and contested testimony of the parties and their witnesses in regard to how the present dispute arose. The Dubrowins testified that in March of 1953, while awaiting the confirmatory deed from the Schremps, they arranged for a contractor, John K. Brian, to construct a road over a portion of the 15 foot right-of-way. Both Mrs. Dubrowin and Brian tes-

tified that when Brian arrived on March 13, 1953, with his equipment, he met both Mrs. Dubrowin and Mrs. Schremp at the site of the proposed road. Their testimony also indicates that at that time Brian suggested that it would be better to grade the road at a point farther to the north for convenience; that this new location meant the road would partially encroach on the Schremps' property; and, that Mrs. Schremp and her husband, over the telephone from Philadelphia, said to Brian that it was all right to cut across their property to gain the desired entrance. Brian further testified that he then graded the road as he had suggested, that being at the same location where the road ran in 1964 when the present suit was filed in the lower court. Mrs. Schremp and Claude M. Skinner, a registered land surveyor, both gave testimony supporting Brian's assertion that the roadway at the time of trial was in the same location as it was in 1953.

The Schremps' testimony was generally in conflict with the above evidence produced in the Dubrowins' behalf. Mrs. Schremp had testified at the prior hearing before the lower court that she did not recall whether or not she met with Mrs. Dubrowin and Brian in March, 1953. However, both Mr. and Mrs. Schremp made it clear at the hearing upon this Court's remand that they flatly denied the alleged telephone conversation between Brian and Mr. Schremp. The Schremps denied having any knowledge that the roadway was partially on their property prior to 1963. Mr. Schremp further testified that the alleged telephone conversation could not have taken place as Brian described it since he was not in Philadelphia at the time, but working in Washington, D. C. at the General Accounting Office.

After testifying in regard to the events and circumstances surrounding the grading of the entrance roadway in 1953, Mrs. Dubrowin further testified that she was still awaiting the necessary confirmatory deed from the Schremps in January, 1954. Her testimony reveals that on or about the night of January 27, 1954, she called Mr.

Schremp to find out what was holding up this deed. She stated that he said at that time that one reason his wife would not sign the confirmatory deed was her reluctance to pay their $100.00 share of the roadway expenses since the roadway was constructed partly on their property. Mrs. Dubrowin then testified that an agreement was reached in their telephone conversation whereby the Dubrowins agreed that the Schremps would be relieved of the $100.00 expense in view of the location of the road; and the Schremps agreed to send along the confirmatory deed. Mrs. Dubrowin's testimony also revealed that this telephone conversation touched upon the Schremps' interest in selling the remainder of their property in Howard County.

In evidence before Judge Macgill were two letters which the Dubrowins claim were written in confirmation of the oral agreement, via telephone, reached by the parties. Mrs. Dubrowin testified that one letter was written by her the day after her telephone conversation. This letter, dated January 28, 1954, and postmarked January 29, 1954, was addressed to Mr. Schremp and stated in part:

"Dear Bob:
"We are glad to have discussed with you last night the road between your place and ours—the fact that it is partly on your land, and the matter of the expense we had agreed to share. * * *"

"When the road was built and you allowed it to be put partly on your land, Ralph and I agreed then that in return we would not ask you to share in the expense of building the road, with the understanding, of course, that we would have continuous right-of-way over the road where it is. As a protection to us, when you sell your place there should be some official recognition, whatever is necessary, of the fact that we do have this right-of-way. If a more formal

statement is needed from us to legally relieve you of any expense in connection with the building of the road, we'll be glad to supply that."

* * *

"We certainly were glad to learn that the papers are coming through. * * *"

* * *

"Sincerely,
FRANCES L. DUBROWIN"

The second letter, dated January 29, 1954, was from Mr. Schremp to the Dubrowins and stated in part:

"Dear Ralph and Fran,
"The confirmatory deed, which has been signed and sealed, is enclosed.
"Thank you for your letter confirming our oral agreement that you will bear the entire cost of the road entrance to your property from Havilands Mill Road."

* * *

"The farm is unofficially on the market. The price is $23,500 to brokers; $22,000 if the place is sold without a commission. A fifteen year, monthly payment mortgage of $12,000 is available.
"With best regards to both of you,

"Cordially,
ROBERT A. SCHREMP"

The postmarked envelope in which this second letter arrived was not available at the hearing before the lower court; but Mrs. Dubrowin testified that she received this letter in response to her own letter, although she could not remember the exact date it came.

Mr. Schremp denied in his testimony that Mrs. Dubrowin had told him that the road had been partially constructed on his property in her telephone call in January, 1954. He further denied that his letter of January 29,

1954, was in response to Mrs. Dubrowin's letter of the day before. Mr. Schremp stated that his letter was merely one of transmittal accompanying the confirmatory deed, and that Mrs. Dubrowin's letter could not have possibly reached him in Pennsylvania prior to February 1, 1954. Again, he testified that he had no knowledge of the roadway's encroachment on his property prior to 1963. The *agreement* referred to in both letters was explained by Mr. Schremp to be a reference to a situation where Brian had trespassed about "one foot" on the Schremp property in grading the road. The Schremps agreed that they would not sue on the one foot trespass and the Dubrowins agreed to "forgive us the hundred dollars."

After reviewing all of the evidence introduced on behalf of the parties, Judge Macgill set forth his findings of fact and conclusions of law in a memorandum opinion filed October 17, 1969.

First, the chancellor stated:

> "This Court believes and finds on the evidence that the telephone conversation and the conversation on the scene, as related by Mr. Brian and Mrs. Dubrowin did, in fact, take place. It believes and finds that Mr. Schremp, as well as Mrs. Schremp, were aware, at that time, that the driveway, as it was to be located, would be partially on their property and to the extent testified to."

Second, the chancellor found "from what might be called 'the totality of the circumstances' that Mr. Schremp's letter was written with reference to that of Mrs. Dubrowin." Confessing the difficulty in relating these two letters if only the dates and the postmark of the later letter are considered, Judge Macgill found it more than mere coincidence that the letters and the alleged telephone conversation between Mrs. Dubrowin and Mr. Schremp all covered "the same three subjects, neither more or less." The identical subjects covered were the oral agreement that the Dubrowins would bear the en-

tire cost of the roadway, the delivery of the confirmatory deed, and the fact that the Schremps' farm was for sale. The chancellor also found that Mr. Schremp's letter, dated January 29, 1954, constituted a written memorandum of the agreement between the parties sufficient to satisfy the requirements of the Statute of Frauds.

Third, the chancellor found that under the circumstances in evidence that Mrs. Schremp "impliedly conferred upon her husband authority, as her agent, to make the agreement whereby the encroachment was asserted to in exchange for the forgiveness of the one hundred dollar contribution which the Schremps had theretofore obligated themselves to make." Among the circumstances to which Judge Macgill referred in supporting this conclusion were Mrs. Schremp's participation as a party to the original agreement with the Dubrowins about the sharing of the roadway costs, the lower court's finding that she assented in 1953 to the encroachment in the presence of Mrs. Dubrowin and Brian, after first consulting with her husband, and the testimony of Mrs. Dubrowin that it was Mrs. Schremp who would not consent to regularize the encroachment unless the Schremps were relieved of the hundred dollar obligation.

Having made the necessary findings in accordance with this Court's instructions, Judge Macgill held that the Dubrowins were entitled to the injunctive relief prayed, but without damages. A decree in conformity with his opinion was signed by the chancellor on October 21, 1969. The decree stated in pertinent part:

> "* * * that the said Robert A. Schremp and Gladys F. Schremp, his wife, their agents, servants and employees, be and they are hereby permanently enjoined and restrained from interfering with that portion of a roadway leading from Haviland Mill Road to the Plaintiffs' property lying to the North of the North 83° 14′ 05″ West 130.71 foot line of that land which by Confirmatory Deed dated February 22, 1953,

and recorded among the Land Records of Howard County in Liber No. 254 folio 36, was granted and conveyed by Robert A. Schremp, et al. to the said S. Ralph Dubrowin and Frances L. Dubrowin, his wife, and as particularly shown on a plat filed in these proceedings and labeled 'Plaintiffs' Exhibit No. 2-A'."

From Judge Macgill's opinion and decree the Schremps have taken, in proper person, a timely appeal to this Court. In their appeal, the Schremps allege some seventeen errors committed by the chancellor below in his findings of fact and conclusions of law. Indeed, the appellants challenge practically each and every finding contained in the chancellor's opinion. After a careful consideration of this case, it is our opinion that Judge Macgill's opinion and decree must be affirmed for the reasons stated below.

As to the chancellor's findings of fact this Court has unequivocally stated many times that it is bound by those findings unless it appears that the court below was *clearly erroneous*. Rule 886, Maryland Rules of Procedure. Examining Judge Macgill's findings and the Schremps' contentions in this light, we find no basis for holding the chancellor's factual determinations to be clearly erroneous. It is true, as the Schremps claim, that there is much conflicting evidence in the case from which the lower court might have drawn different conclusions. However, the weighing of conflicting evidence is entrusted to the chancellor alone, for only he has had the firsthand opportunity to judge the credibility of all the evidence and the inferences to be drawn from the evidence. We believe that the record clearly shows that the chancellor carefully detailed and weighed all of the evidence on each issue and was amply supported in each of his findings of fact by evidence in the case.

Having decided that the chancellor properly made his factual determinations, we find that his legal conclusions drawn therefrom were correct under well established

Maryland law. Judge Macgill's conclusions that the Schremp letter dated January 29, 1954, constituted a written memorandum of the parties' agreement sufficient to satisfy the Statute of Frauds and that such agreement was enforceable in equity by the Dubrowins against Mr. Schremp and his wife, who impliedly consented to have her husband act as an agent in her behalf, are correct under our prior decisions.

As Judge Singley pointed out for the Court in our prior opinion in this case, the applicable provision of the Statute of Frauds states:

> "And be it further enacted by the Authority aforesaid, That from and after the said four and twentieth Day of June, no Action shall be brought whereby. . .upon any Contract or Sale of Lands, Tenements, or Hereditaments, or any Interest in or concerning them. . .unless the Agreement upon which such Action shall be brought, or some Memorandum or Note thereof shall be in Writing, and signed by the Party to be charged therewith, or some other Person thereunto by him lawfully authorized."
>
> (Alexander, "British Statutes In Force In Maryland," (Coe Edition) Volume II, Page 690)

This Court has interpreted the above provision to mean:

> "* * * that a memorandum, in order to make enforceable a contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (2) the land, goods or other subject-matter to which the contract

> relates, and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made. I *Restatement, Contracts,* sec. 207; *London v. Riebel,* 189 Md. 376, 56 A. 2d 34."
>
> *Sinclair v. Weber,* 204 Md. 324, 332, 104 A. 2d 561, 564 (1954).

Examining Mr. Schremp's letter of January 29, 1954, in context with the finding of the lower court that it was written in response to Mrs. Dubrowin's letter mailed the same day, we conclude that the Schremp letter satisfies the Statute of Frauds as above expressed. Each party to the agreement was expressly identified in Mr. Schremp's letter, with the sole exception of his wife, whom the chancellor found to be represented by Mr. Schremp, as her agent. The Schremp letter also expressly recognizes an agreement between the parties whereby the Dubrowins were to bear the entire cost of the entrance roadway. It is true, as the Schremps pointed out in their brief and oral argument before this Court, that the Schremp letter does not express all of the terms and conditions of the agreement, but the Schremp letter, by referring to the agreement as set out in the Dubrowin letter, adopted and incorporated the terms and conditions of the agreement set forth in the Dubrowin letter. In effect, the agreement contained in the Dubrowin letter became a part of the Schremp memorandum of the agreement. This Court has fully accepted the rule that the memorandum required by the Statute of Frauds may consist of two writings if each indicates it relates to the same transaction and, though only one be signed by the party to be charged, if "the signed writing refers to the unsigned writing." *Sinclair v. Weber, supra,* 204 Md. at 332, 104 A. 2d at 564. Thus, when the Schremp letter is read in conjunction with the Dubrowin letter, a memorandum which adequately describes the conditions and terms of the parties' agreement is apparent.

For the reasons stated, it is our opinion that the lower court has properly followed our instructions on remand

of this case and we shall affirm the chancellor's decree of October 22, 1969.

> *Decree of October 22, 1969, affirmed, the costs to be paid by the appellants.*