EGGERT ET AL. *v.* MONTGOMERY COUNTY
COUNCIL ET AL.

[No. 80, September Term, 1971.]

\* \* \*

EGGERT ET AL. *v.* GLEASON, individually and as
County Executive for Montgomery
County ET AL.

[No. 88, September Term, 1971.]

*Decided October 20, 1971.*

244

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Edward L. Genn,* with whom was *Mark A. Winkler* on the brief, for appellants.

*David L. Cahoon, County Attorney,* with whom were *Alfred H. Carter, Deputy County Attorney, Philip J. Tierney* and *Stephen J. Orens, Assistant County Attorneys for Montgomery County,* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

In this case before us, there are two appeals which have been consolidated.

*Appeal No. 80*

In No. 80, *Eggert et al. v. Montgomery County Council et al.,* the plaintiffs, William E. Eggert et al.—appellants here—filed their Bill of Complaint (Equity No. 39799) in the Circuit Court for Montgomery County on October 1, 1970, against the Montgomery County Council (County Council) and Mason Butcher, the County Manager, alleging that Resolution No. 6-3172 adopted by the County Council on September 1, 1970, directing the County Manager to proceed with the construction of Tilden Lane between Parkedge Drive and Old Stage Road in Montgomery County was invalid and unlawful in that, *inter alia,* the road to be constructed lies within an area over which the Maryland-National Capital Park and Planning Commission (Park and Planning Commission) had jurisdiction, and that Commission had not given its consent to the proposed construction and that the adoption of Resolution No. 6-3172 was arbitrary, discriminatory and capricious because it ignored and disregarded without reason the recommendations of the Administrative Board appointed to conduct a hearing on whether the project should be constructed and contrary to the opposition of 61% of those to whom ballots had been sent and returned. The prayers for relief were that (1) Resolution No. 6-3172 be declared null and void, (2) the defendants be enjoined from proceeding with the construction, and (3) the plaintiffs have other and further relief. The defendants demurred to the Bill of Complaint on November 17, 1970; and a hearing on the demurrer was held before

Judge Levine on December 18, 1970. In an oral opinion Judge Levine indicated that he would sustain the demurrer, without leave to amend, and gave his reasons for his decision.

The plaintiffs, on December 22, 1970, filed a Petition for Rehearing together with three exhibits. Judge Levine, on December 23, 1970, filed a written order dated December 18, 1970, sustaining the demurrer, without leave to amend.

On January 26, 1971, Judge Levine passed an order which recited that the plaintiffs had *orally* petitioned the circuit court on January 22, 1971, to extend the enrollment of the court's order of December 23, 1970, and had filed a Petition for Reconsideration with a request for a stay of the proceedings, and none of the parties knew of the entry of the order of December 23, 1970, and that the parties had consented to an order striking the order for mistake and irregularity. The order provided that any enrollment be stricken and that the order be deemed in force and effect, *nunc pro tunc*, as of January 22, 1971.

On February 10, 1971, Judge Levine filed an order dated February 9, 1971, denying the Petition for Rehearing or for Reconsideration. On February 19, 1971, the plaintiffs filed an order of appeal to this Court from "the Judgment and Order entered in this action on the 23rd day of December 1970 sustaining the demurrer without leave to amend; the Judgment and Order entered on the 26th day of January, 1971; the Order entered on the ninth day of February, 1971; and all underlying orders, rules and decisions."

Although no motion to dismiss the appeal in No. 80 had been made by the appellees, the Court, *sua sponte,* will dismiss the appeal in that case pursuant to Maryland Rule 835 a 2, b 3.

We have previously indicated that *in equity* the pleadings and definitive actions of the Chancellor *must* be done by *written* documents duly filed in the equity case. *Tvar-*

*dek v. Tvardek,* 257 Md. 88, 261 A. 2d 762 (1970) ; *Mattingly v. Houston,* 252 Md. 590, 250 A. 2d 633 (1969).

The docket entries indicate no written petition filed on January 22, 1971; and the order of January 26, 1971, recited that it was orally made on January 22. This is not a sufficient compliance with the established chancery practice. The final order of December 23, 1970, had become enrolled on January 22, 1971, and, more importantly, the 30-day period for appeal to this Court also expired on that day. That final order could not be *stricken out* pursuant to Rule 625, the circuit court's general revisory power over the order having expired on January 22. The circuit court, in our opinion, did not have the power to "strike" the enrollment of the final order of December 23, 1970, *nunc pro tunc* as of January 22, 1971, by an order passed on January 26, 1971. No appeal having been taken within the 30-day period, this Court has no jurisdiction to consider it and, being jurisdictional, the parties cannot supply a nonexistent jurisdiction by consent. See *Price v. Hobbs,* 47 Md. 359 (1877). See also *Bushey v. State Roads Commission,* 231 Md. 154, 189 A. 2d 98 (1963) ; 4A C.J.S. *Appeal & Error* § 458 (b), p. 150.

The order of February 9, 1971, denying the Petition for Rehearing or for Reconsideration was within the sound discretion of the trial court and is not reviewable in the absence of an abuse of discretion, which is not shown in the present case.

Then, too, substantially all of the issues and facts set forth in the Petition for Rehearing or Reconsideration are raised in Equity No. 40642, involved in Appeal No. 88, hereinafter considered.

The appeal from the order of January 26, 1971, was not argued or briefed in this Court and is deemed to have been waived. See *Air Lift, Ltd. v. Board of County Commissioners of Worcester County,* 262 Md. 368, 278 A. 2d 244 (1971) ; *Dubrowin v. Schremp,* 248 Md. 166, 235 A. 2d 722 (1967), *appeal after remand,* 257 Md. 623, 263 A. 2d 827 (1970).

We have, however, carefully considered the briefs and arguments in regard to Appeal No. 80 and concluded that if we were able to consider this appeal on its merits, we would have affirmed the order of December 23, 1970.

### Appeal No. 88

We now turn to Appeal No. 88. In No. 88, William E. Eggert et al. (for the most part, the same plaintiffs who filed the Bill of Complaint in Equity No. 39799 involved in Appeal No. 80) filed their Bill of Complaint (Equity No. 40642) on March 1, 1971, against James Gleason, individually and as County Executive, Lisbon-Madeira, Inc., a corporation, the Department of Public Works and the seven members of the County Council and their successors in office. The relief prayed for was (1) for an injunction, preliminary and permanent, against the defendants from proceeding with Public Works Project No. 2140—the construction of Tilden Lane between Parkedge Drive and Old Stage Road, the same project involved in Equity No. 39799; (2) for a declaration in regard to the respective powers and authority of the County Council and the County Executive as well as in regard to the validity of laws, statutes, actions or decisions improperly restricting such power and authority; (3) for an order directing the County Council to reconsider Public Works Project No. 2140; and (4) for other and further relief.

The Bill of Complaint alleged the standing of the plaintiffs as property owners and residents near the project and alleged that the suit was brought on behalf of the plaintiffs and all others similarly situated. It was alleged that after the earlier County Council (the County Council operating prior to the adoption of the new Montgomery County Charter effective on December 7, 1970) had passed Resolution 6-3172, dated September 1, 1970, in regard to Public Works Project No. 2140 (hereinafter referred to as the "Tilden Lane Bridge" or the "project"), studies were made indicating serious problems with the project. The defendant County Council members were

elected to office in the November 5, 1970, elections; and when the new County Charter became effective in December 1970, the old County Manager form of government was eliminated. The new County Council, in view of the new circumstances, desired to reconsider the project; but the Montgomery County Attorney erroneously advised the new County Council that under the new Charter it lacked the power and authority to reconsider the matter. The new County Council, based on this erroneous advice instead of reconsidering the project itself, requested the defendant, Gleason, as the newly elected County Executive, to reconsider it. It was further alleged that the new County Council does have the power to reconsider the project and was improperly advised to the contrary. It is of the opinion that the project should be halted; but the County Executive has asserted that he alone has the power to make this determination and has refused to halt the construction of the project notwithstanding the known disapproval of the new County Council. While the Petition for Rehearing or for Reconsideration was pending in Equity No. 39799, and without notice, the County Executive awarded the contract for the project to the defendant, Lisbon-Madeira, Ltd., the work to be supervised by the defendant, Department of Public Works. The denial of the Petition for Rehearing or for Reconsideration in Equity No. 39799 was also alleged and that the plaintiffs had no adequate remedy at law. The Bill of Complaint was duly verified. A number of documentary exhibits were filed with the Bill of Complaint to which reference in detail will be made later in this opinion.

After several preliminary skirmishes, a show-cause order, answer and a hearing, Judge Pugh, on March 29, 1971, issued an interlocutory injunction restraining the defendants, their agents, servants and employees, from going forward with the project pending final adjudication by the circuit court, requiring the plaintiffs to file a bond in the amount of $10,000.00 to answer to the defendants for any damage suffered by them by reason of

the issuance of the preliminary injunction if ultimately determined that it should not have been issued and setting the hearing on the merits for April 19, 1971. The required bond was deposited in the Registry of the circuit court on the day the order for the preliminary injunction was signed.

The defendants, on March 24, 1971, filed a "Demurrer and Answer" in which each paragraph of the Bill of Complaint is separately considered, the defendants "demurring" to certain paragraphs and also answering the paragraphs where an answer was deemed to be required. Rule 371 gives defendants the right to file a demurrer *and* an answer in the same paper, but the Rule does not contemplate a "blend" of these two documents. We will treat the "Demurrers" to the respective paragraphs as a part of an answer challenging the legal sufficiency of the allegations of that paragraph and will consider the entire document as an "Answer," in the usual sense, to the Bill of Complaint. The principal grounds of defense raised in the answer were: (1) *Res judicata* because of the adverse decision in Equity Nos. 39798 and 39799; (2) the award of the contract for the project was a discretionary governmental function and there were no allegations of noncompliance with legal requirements, fraud or bad faith so that judicial review was not justified; and (3) that authorization of the project was done in executive session and all of the defendants have fully adhered to all laws and procedures governing their conduct in regard to the subject matter raised in the suit.

When the case came on for a hearing on the merits on April 19, the parties entered into two Stipulations in lieu of oral testimony. The first Stipulation was in regard to Pleadings and Exhibits. It provided that the suit on the merits should be submitted to the circuit court on the basis of the pleadings, including the Bill of Complaint and its exhibits and the demurrer and answer and its exhibits. In addition, a number of exhibits were to be considered to be in evidence, the last one (Plaintiffs' Exhibit

P) being the entire record in Equity No. 39799. These stipulated exhibits will be considered in detail, where deemed necessary, later in this opinion.

The second Stipulation was in regard to testimony. It provided:

"I. While the County Attorney and Defendants do not stipulate to the allegations in the bill relating to instructions and advice of the County Attorney to the Montgomery County Council, the County Attorney does admit that he advised the Council that, in the type of matter involved in this case, roadbuilding and bridgebuilding, any power it may have had except powers relating to appropriations has been, and was, transferred to the County Executive as well as any reconsideration of such decision.

"II. The parties agree that, without conceding in any way the materiality or relevancy of the testimony, or to avoid extensive time devoted thereto, the Plaintiffs would produce testimony on the question of their standing and the adverse affect of the bridge and connecting thoroughfare as follows:

"The Plaintiffs would themselves testify that all of them reside in the immediate vicinity of the proposed bridge; that some are located on the east side of the proposed span and some on the west; that the property that each owns is either adjacent to, or in close proximity to, the bridge here involved; that their testimony would further be that, because of the expected traffic patterns, each and his family will be exposed to an extremely large increase in the number of vehicles and trucks passing his home daily, and that as a consequence he and his family will suffer unusual physical danger; that their children will be in especial danger; and that on account of this and the conditions cre-

ated, and for reasons appearing in the exhibits as well, their homes and properties will be substantially depreciated in value, and be difficult to sell at any reasonable price; that this action will totally alter the neighborhood and area from a quiet residential neighborhood to a heavily trafficked thoroughfare, and that their damage will be irreparable.

"III. The parties do further agree, without conceding materiality or relevancy of the facts, that evidence will be produced by the Plaintiffs, reflected in part in Exhibit M, that, following the resolution of September 1, 1970, adopting the Tilden Lane project, bids were submitted on December 3, 1970; on January 4, 1971 a memorandum from the Director of Public Works to the Chief of the Purchasing Department approved Lisbon-Madeira as contractor; on January 5th the Chief Administrative Officer approved the contractor; and the contractor was so advised and forwarded bonds to execute; that he did so and also executed the contract on January 11, 1971; that the contract for the bridge was ratified by the Acting Chief Administrative Officer on January 19th, and a letter directing commencement of the work addressed to the contractor on January 22nd (Plaintiffs' Exhibit M.)

"IV. The parties stipulate to the authenticity of the final draft master plan (Plaintiffs' Exhibit K, page 14) which makes specific reference to Tilden Lane Bridge and which speaks for itself. On November 28, 1970, the Council approved the master plan and rejected the Maryland National Capital Park and Planning Commission's recommendations that the Tilden Lane extension be delayed."

After argument of counsel, Judge Pugh, on April 23,

1971, filed a written opinion and an order dismissing the Bill of Complaint and dissolving the preliminary injunction issued on March 29, 1971. The lower court, in its opinion, carefully reviewed the relevant statutory provisions, decided that Resolution No. 6-3172 of September 1, 1970, authorizing the project was not a legislative action as a zoning or planning matter because (a) the old County Council was not sitting as a District Council when the Resolution was passed, as was required for the enactment of zoning matters, and (b) the action was taken under Section 24-35 of the Montgomery County Code, 1965 at an Executive Session of the County Council as then constituted. Judge Pugh relied upon our decision in *Scull v. Montgomery Citizens League,* 249 Md. 271, 239 A. 2d 92 (1968) in which we distinguished between legislative functions of the County Council, on the one hand, and executive or administrative functions, on the other. He concluded that only the County Executive, under the new Charter, had the power to reconsider executive matters such as the project in question.

The plaintiffs, on April 26, 1971, filed a Petition for a Rehearing for an order reinstating the cause and continuing the injunction, for an order setting aside the dissolution of the injunction, and for other relief. On April 28, 1971, the plaintiffs filed an appeal to this Court from the order of April 23, 1971, and the denials of any post-order relief.

Having petitioned the lower court to fix the amount of the supersedeas bond, a hearing was held. Judge Pugh in an order dated and filed on April 28, 1971, recited that the evidence disclosed that the defendants could sustain damages of $95,000.00 and fixed the penalty of the supersedeas bond at $50,000.00, the bond in that amount to be filed not later than May 3, 1971, at 4:00 o'clock P.M. On May 3, the plaintiffs filed a Motion for Reconsideration or Modification of the Supersedeas Bond to fix the amount at not exceeding $8,200.00 or some appropriate lower figure. On May 6, 1971, Judge Pugh passed and

filed orders denying the Motion for Rehearing filed May 3, 1971.

On May 20, 1971, the plaintiffs entered an appeal to this Court from the order dated April 28, 1971, denying the Motion for Rehearing and all underlying and interlocutory orders; the order of April 28, 1971, setting the penalty of the supersedeas bond at $50,000.00 and underlying rulings; and the order of May 5, 1971, denying the Motion for Reconsideration and Modification of Bond and all underlying orders.

The plaintiffs had filed a motion in this Court on May 7, 1971, for modification of the order setting the amount of the supersedeas bond. This motion was opposed by the defendants. We denied this motion on May 31, 1971.

The question presented to us for decision is whether the lower court erred in ruling that the County Executive has the sole power to reconsider prior actions in regard to the construction of the Tilden Lane Bridge.

We have concluded that the lower court did not err in its ruling and we will affirm its orders in this case.

When the project was approved by the County Council under the former Charter, the Montgomery County Code, 1965 provided:

"§ 24-31. No road shall be constructed by the County except pursuant to a *resolution of the council adopted in open executive session* directing the county manager to construct such road * * *."

(Emphasis supplied.)

The Administrative Board had recommended the rejection of the project; but the County Council, *in executive session* on September 1, 1970, adopted Resolution No. 6-3172 which provided in relevant part:

"WHEREAS the County Council, by Resolution No. 6-2856 adopted on May 12, 1970, proposed the improvement of various public ways as hereinafter mentioned; and

"WHEREAS public hearing concerning the aforesaid proposals was conducted on June 4, 1970, by the Administrative Board heretofore designated in this matter; and

"WHEREAS the aforesaid Administrative Board has recommended that the proposals as outlined in Resolution No. 6-2856 be rejected; and

"WHEREAS the County Council has reviewed the entire record and recommendations of the Administrative Board in this matter and disagrees with the Board in regard to Project No. 2140—Tilden Lane; now

*"Be It Resolved by the County Council for Montgomery County, Maryland, that—*

"1. The County Council hereby finds that the public interest does at this time require extension of Tilden Lane as outlined in Resolution No. 6-2856 below."

\* \* \*

"3. Pursuant to Section 24-35 of the Montgomery County Code (1965 Edition as amended), the County Manager is hereby directed to proceed with construction of facilities in the Fourth Election District, as follows—

Public Works Project No. 2140, to comprise extension of Tilden Lane between Parkedge Drive and Old Stage Road; this section to be paved 36 feet wide with concrete curbs, gutters, and sidewalks along both sides, and other appurtenant work including crossing over Tilden Creek.

"4. Cost of work authorized by this resolution is estimated to be $87,000.00; and shall be borne by the County, payable from funds

currently appropriated for Public Works Project No. 2140."

A revision of § 24-31 of the Montgomery County Code in anticipation of the new Charter becoming effective (Chap. 3, Laws of Montgomery County, 1971) was passed by the "old" County Council, effective December 7, 1970, which provided in relevant part:

> "§ 24-31 No road shall be constructed by the County except purusant to a written order of the *County Executive* authorizing the construction of such road * * *."
> (Emphasis supplied.)
> Chap. 3 also provided in § 24-33 that:
> "(a) If * * * the *County Executive* shall find that the public interest requires * * * any road construction project * .* * he shall * * * authorize such construction * * *."
> (Emphasis supplied.)

The new Charter, adopted by the voters of Montgomery County at the General Election held on November 5, 1968, became effective so far as the new County Executive was concerned on December 7, 1970. Until that time, the County Council continued to exercise all executive powers vested in it by the Charter in effect prior to December 5, 1968. For a consideration of the provisions of the "old" Charter in regard to the legislative and the executive and administrative functions of the County Council under that Charter, see our opinion in *Scull v. Montgomery Citizens League*, 249 Md. 271, 239 A. 2d 92 (1968), *supra*.

The County Executive (theretofore a member of the "old" County Council) was elected at the General Election held on November 5, 1970, and was sworn in as such on the first Monday of December (December 7), 1970.

The new Charter provided for the separation of the legislative and executive powers, the legislative powers being placed in the County Council and the executive powers being vested in the County Executive.

Article 1 of the new Charter entitled "Legislative Branch" provides in relevant part:

"*Section 101    County Council*

All legislative powers which may be exercised by Montgomery County under the Constitution and laws of Maryland, including all law making powers heretofore exercised by the General Assembly of Maryland but transferred to the people of the County by virtue of the adoption of this Charter, and the legislative powers vested in the County Commissioners as a District Council for the Montgomery County Suburban District, shall be vested in the County Council. The legislative power shall also include, but shall not be limited to, the power to enact public local laws for the County and repeal or amend local laws for the County heretofore enacted by the General Assembly upon the matters covered by Article 25A, Annotated Code of Maryland, 1957, as now in force or hereafter amended, and the power to legislate for the peace, good government, health, safety or welfare of the County. Nothing herein contained shall be construed to authorize or empower the County Council to enact laws or regulations for any incorporated town, village or municipality in said County on any matter covered by the powers granted to said town, village or municipality by the act incorporating it or any subsequent act or acts amendatory thereto."

Article 2 entitled, "Executive Branch," provides, *inter alia*:

"*Section 201    Executive Power*

The executive power vested in Montgomery County by the Constitution and laws of Maryland and by this Charter shall be vested in a County Executive who shall be the chief executive officer of Montgomery County and who shall

faithfully execute the laws. In such capacity, the County Executive shall be the elected Executive Officer mentioned in Article XI-A, Section 3, of the Constitution of Maryland. The County Executive shall have no legislative power except that he may be expressly delegated the power to make rules and regulations by a law enacted by the Council."

It is in this statutory setting that we consider Section 110, *Exercise of Zoning, Planning & Other Powers,* much relied on by the appellants. Section 110 provides:

"In the exercise of powers authorized by any act of the General Assembly or the Constitution of Maryland, other than the law making power vested in it by Article XI-A of the Constitution and the grant of express powers in Article 25A, Annotated Code of Maryland, 1957, the Council shall follow the procedure set forth in such law or section of the Constitution and the exercise thereof shall be effected in the manner prescribed therein. The powers relating to zoning, planning or subdividing shall be exercised by the Council as prescribed by law and the exercise of such powers shall be exempt from veto by the County Executive."

As already indicated, the County Attorney advised the County Council that the authorization of the construction of the project was an executive function, that executive functions had been transferred to the County Executive by the provisions of the new Charter; and that the new County Council had no power to reconsider the executive decision. On December 8, 1970, the new County Council, by a four to three vote, adopted a resolution requesting the County Executive to reconsider the authorization for the project. The County Executive declined to do this. Bids had already been submitted to the County on December 3, 1970; and on January 4, 1971, the Director of Public Works selected Lisbon-Madeira, Ltd., as the lowest

responsible bidder and recommended that a contract for the construction be awarded to that company. This was done, the contract having been fully executed on January 19, 1971, and a letter to begin work having been issued on January 22, 1971.

We agree with the lower court that the authorization of the project was an executive and not a legislative function. It was done by the old County Council in executive session and the new provisions of the Montgomery County Code, already mentioned, indicate that the County Executive shall have jurisdiction in regard to the construction of roads. The test which we laid down in *Scull, supra,* for the determination of whether an action is executive or administrative indicates that the authorization for the construction of a road is executive and not legislative in nature. We stated in *Scull*:

> "A recognized test for determining whether * * * it is executive or administrative * * * is whether the ordinance is one making a new law —an enactment of general application prescribing a new plan or policy—or is one which merely looks to *or facilitates the administration, execution or implementation of a law already in force and effect."*
> (Emphasis supplied.)
> (249 Md. at 282, 239 A. 2d at 98.)

We are also of the opinion that the authorization of the project is not a zoning or planning matter within the purview of Section 110. It is not an ordinance approving a Master Plan or providing for an amendment to the text of the Zoning Ordinance or providing for an amendment to a zoning map. The implementation of roads, bridges, libraries, police stations or other capital projects is pursuant to existing law. See § 24-30 *et seq.,* Montgomery County Code, 1965, as amended by Chap. 3, Laws of Montgomery County, 1971. This implementation of existing law is executive in character as *Scull* indicates.

The appellants argue that our decision in *Wicomico County v. Todd,* 256 Md. 459, 260 A. 2d 328 (1970) is "dispositive" in support of their contentions. We do not so consider it. In *Wicomico County,* we held that under the Charter involved in that case (like the old Montgomery County Charter), no separation of powers was intended. This, however, is not the case where the provisions of a Charter—like the new Montgomery County Charter—expressly provide for the separation of the legislative and executive powers of the County government.

The County Executive, having been vested with the executive power, has the sole power to reconsider the prior executive action of the old County Council and, in the absence of any charge of fraud or breach of trust on the part of the County Executive, there was no basis for judicial review in the present case. The orders of the trial court were correct and should be affirmed.

In view of our conclusion on the principal question involved, we find it unnecessary to pass upon the question of the standing of the appellants or of other questions possibly involved in the case.

> *Appeal in No. 80 dismissed; orders in Appeal No. 88 affirmed; the appellants to pay the costs in both cases.*