AMES ET AL. *v.*
BOARD OF SUPERVISORS OF ELECTIONS OF
MONTGOMERY COUNTY ET AL.

[No. 201, October Term, 1949.]

544

*Decided June 8, 1950.*

546

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*J. J. Hayden,* with whom was *A. H. Gardner* on the brief, for Norman B. Ames.

*David Macdonald, County Attorney for Montgomery County,* with whom was *James S. Lanigan, Assistant County Attorney,* on the brief, for Montgomery County, Maryland.

*Paul F. Due* for the Democratic State Central Committee for Montgomery County.

*Carey E. Quinn* for the Board of Supervisors of Elections of Montgomery County.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Montgomery County sustaining demurrers to a bill

of complaint and dismissing the bill. The suit was instituted as a class suit to enjoin the Board of Supervisors of Elections of Montgomery County from accepting the application of Gerald D. Morgan as a candidate for nomination for the office of member of the County Council in the primary election to be held on September 11, 1950. Montgomery County, the Democratic State Central Committee for Montgomery County, and Mr. Morgan were permitted to intervene. No question of parties or their standing to maintain the suit is presented. The bill alleges and the demurrers admit that the application was upon an official form prepared by the Board of Supervisors and that, unless enjoined, they will submit his name in the primary to the voters of the Democratic party only, and as a party nominee in the general election to follow, in accordance with the provisions of the "Lindsay Law", Code (1947 Suppl.) Article 25A, Section 1A (Chapter 792, Acts of 1945). The appellants contend that this law is unconstitutional and invalid, and that candidates for election to the office of member of the County Council must be nominated and elected in accordance with the provisions of Chapter 12 of the Laws of Montgomery County enacted by the Council on May 30, 1949 and known as the "County Council Elections Act." This Act provides for a special primary to be held at the same time as the party primaries, in which all candidates for nomination appear on the ballot without party label and all voters of the County are entitled to vote. The two candidates who receive the largest number of votes become the nominated candidates and at the general election the names of such candidates appear on the ballot without party designation. The Act does not apply to other offices, and it uses the established machinery of the Board of Supervisors. The appellees contend that this Act is invalid.

The County Council Elections Act was enacted pursuant to Article I, Section 1 of the Charter of Montgomery County, adopted by the voters of the County on November 2, 1948. This Section provides that "The

members [of the Council] shall be nominated and elected by the qualified voters of the County as the members of the General Assembly are or may be elected under the law of Maryland subject, however, to the provisions of Sec. 4, Article II and of Sec. 3, Article IX of this Charter."

Section 3, Article IX is applicable only to the special election for members of the first County Council, required to be held 35 days after the Charter took effect. It has no application here. Section 4b, Article II authorizes the County Council in legislative session to "Enact laws necessary to provide for the nomination and election of members of the County Council in such manner as may be legally permitted under the law of Maryland." This delegation of power purports to be in addition to the power conferred by Section 4a "to enact public local laws for the County and repeal or amend local laws for the County heretofore enacted by the General Assembly upon the matters covered by the Express Powers Act of 1918 (Article 25A, Annotated Code of Maryland, Edition 1939) as now in force or hereafter amended".

If the authority of the Council were derived from the Express Powers Act, as amended, it is not disputed that the Lindsay Law would control, since it provides: "The members of the county council of any county adopting a charter under said Article XIA [the Home Rule Amendment of the Constitution] shall be elected on the general ticket by the qualified voters of such county as the members of the General Assembly are or may be elected under the provisions of the law of the State of Maryland, and members of the county council shall be likewise nominated as members of the General Assembly are or may be nominated under provisions of the law of the State of Maryland." (Code 1947 Suppl., Article 25A Section 1A). It is conceded that members of the General Assembly must be nominated by party primaries and elected under party designations under Article 33, Sections 53 and 63 of the Code (1947 Suppl.). But since the authority stems from Section 4b, and not from Sec-

tion 4a, it is contended that the only limitation is that the nomination and election of members of the Council shall be "in such manner as may be legally permitted under the law of Maryland". It is argued that the attempted exercise of the authority delegated by Section 4b is "legally permitted" because the legislative power set out in the Charter derives from the Home Rule Amendment itself, and being so derived must take precedence over any attempted interference by the General Assembly. The fundamental inquiry, therefore, is as to the purpose and scope of that amendment.

The appellants point to section 3, Article XIA of the Home Rule Amendment, which provides: "Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said * * * County * * *." They contend that power to prescribe the manner of nomination and election must be implied, citing *County Commissioners for Montgomery County v. Supervisors of Elections of Montgomery County*, 192 Md. 196, 63 A. 2d 735. In that case we sustained the validity of section 3, Article IX of the charter calling a special election within 35 days after its adoption for the election of the first County Council, as against the contention that such election must be deferred to the next quadrennial election for State and County officers, under Article XVII of the Constitution, known as the "Fewer Elections Amendment". We held that the latter amendment was "not designed to regulate, nor does it prohibit, such a special election as that here involved with reference to the filling of initial vacancies * * *." 63 A. 2d at page 742. In regard to the contention that authority to hold such a special election must be conferred by the General Assembly and not by Section 3, Article IX of the charter, we held that the power to provide for that election "does not depend on any legislative grant from the General Assembly, but * * * follows inevitably from the constitutional provision that any charter adopted shall 'provide for an elective legislative body.' " We also said, 63 A. 2d at page 743: "There are

no provisions of the general laws of the State of Maryland relating either to the nomination or the election of members of the General Assembly to fill vacancies. * * * There is therefore no provision of the law of the State of Maryland applicable to the situation presented in the case at bar." It should also be noted that the manner of electing councilmen was not in conflict with anything in the election laws, the only issue being as to the time of the election.

The *County Commissioners* case is readily distinguishable. The Constitutional mandate that each charter shall provide for an elective legislative body contemplates the immediate creation of an instrument of government, and if its creation were to depend upon action by the General Assembly that purpose might be defeated by its failure or refusal to act, creating an *interregnum* in office. But that argument can hardly apply to subsequent elections, particularly where the General Assembly has, in the meantime, dealt specifically with the subject matter. The question of future elections was expressly left open in the *County Commissioners* case.

Section 1 of the Home Rule Amendment authorizes the adoption of a "charter or form of government" which shall become the law of the adopting county "subject only to the Constitution and Public General Laws of this State". Section 2 calls for enactment of a public general law containing a grant of express powers for a chartered county, and that such express powers "shall not be enlarged or extended by any charter * * *, but such powers may be extended, modified, amended or repealed by the General Assembly". Section 3 provides that a chartered county "subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws * * * upon all matters covered by the express power granted" but that "in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control." Section 4 forbids the enactment of local laws by the General Assembly "on any subject covered

by express power granted \* \* \*." Section 6 provides that "this Article shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature \* \* \*."

It seems clear from these provisions that while the initial steps of creating a "charter or form of government" are not dependent upon legislative action, as we have held, the scope of its legislative authority is severely restricted. Not only is the power to enact public general laws reserved to the General Assembly, but the power of the county to enact local laws is restricted to matters covered by the express powers granted. The Lindsay Law, of course, is not a grant of power; on the contrary, it evidences a clear legislative intention to forbid the particular variation set up by the County Council Elections Act. The Lindsay Law may, perhaps, be out of place in the Article of the Code dealing with a grant of express powers, but it confirms what is otherwise apparent, that the provisions of Article 33 of the Code dealing with primaries and elections apply generally to all candidates for public office in the counties and in Baltimore City. It is not without significance that Article III, Section 49 of the Constitution provides that "The General Assembly shall have power to regulate by law, not inconsistent with this Constitution, all matters which relate to the \* \* \* time, place and manner of holding elections in this State \* \* \*."

The appellants contend that the manner of selecting councilmen is a matter of purely local concern. But assuming this to be true, the authority of the Council to legislate does not include all powers of local self-government, but only those covered by the express powers. In *State v. Stewart,* 152 Md. 419, 423, 137 A. 39, 41, it was said: "This article of the Constitution itself does not grant the power \* \* \* to legislate locally on all subjects, but only in respect to such subjects as are delegated to it in the legislative grant of powers". So long as the grant remains unchanged legislation on the subject matter of the grant is exclusively committed to

the local authorities and denied to the General Assembly, but not otherwise. *Cf. G. I. Veterans' Taxicab Assn. v. Yellow Cab Co.*, 192 Md. 551, 65 A. 2d 173, 8 A. L. R. 2d 568.

The appellants point to a number of provisions in the Charter (Sections 4 and 5) concerning the composition, qualifications and compensation of the County Council and its members whose validity is not questioned, and argue that if the charter cannot validly provide the method of nomination and election these would also fall. These provisions, of course, are not before us. But they may stand upon a different footing. Section 6, Article XIA. (the Home Rule Amendment) provides that "The power heretofore conferred upon the General Assembly to prescribe the number, compensation, powers and duties of the County Commissioners in each County [Article VII, Section 1 of the Constitution], and the power to make changes in Sections 1 to 6 inclusive, Article XI of this Constitution [prescribing among other things the numbers, qualifications and composition of the City Council of Baltimore and its members], when expressly granted as hereinbefore provided, are hereby transferred to the voters of each County and the voters of City of Baltimore, respectively, provided that said powers so transferred shall be exercised only by the adoption or amendment of a charter as hereinbefore provided; and provided further that this Article shall not be construed to authorize the exercise of any powers in excess of those conferred by the Legislature upon said Counties or City as this Article sets forth." There is no mention here of the manner of conducting elections.

In 1920 the voters of Baltimore City authorized a change in the City Council creating a single chamber. However, there was also enabling legislation passed by the General Assembly in Chapter 555, Acts of 1920. It was the opinion of the Charter Board of 1918 that without an express grant of power "it is beyond the power of this Charter Board to include in any Charter submitted by it, any changes * * * in the bicameral character

of the City Council or in the manner or time of electing, or term of office of its members." Charter and Public Local Laws of Baltimore City (1949 ed.) p. X.

Whether this Act was necessary, or whether the power of the County voters to make changes in Article VII, Section 1, is broader or narrower than the power conferred upon Baltimore City voters, we need not decide. The reference to County Commissioners in the Constitution and laws of the State applies to a County Council "whenever such construction would be reasonable". Constitution, Article XIA, Sec. 3; *Schneider v. Lansdale,* 191 Md. 317, 61 A. 2d 671, 674. Section 1, Article VII provides that Commissioners be elected "on general ticket of each county". Their number is "such as now or may be hereafter prescribed by law". Section 7 of Article 25, Code 1939 provides that their number be "fixed by the code of local laws for each county." We need not pursue the inquiry further, for it seems clear that in the absence of an Act of the General Assembly authorizing a change in the election system, the system set up in the County Council Elections Act is not legally permitted.

*Order affirmed, with costs.*