492 A.2d 630

**Paulette S. SCHAUDER**

v.

**Stuart H. BRAGER et al.**

**No. 125, Sept. Term, 1984.**

Court of Appeals of Maryland.

May 28, 1985.

Clarence M. Thomas, Baltimore (Durkee, Thomas & Hahn, Baltimore, on the brief), for appellant.

Ronald J. Levasseur, Towson, for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

SMITH, Judge.

We shall here hold that under Maryland Code (1957, 1979 Repl.Vol.) Art. 101, § 57 the Workmen's Compensation Commission is empowered to approve fees of physicians and others who evaluate a claimant in preparation for trial and who appear for a claimant at trial. This section provides in pertinent part:

> "No person shall charge or collect any compensation for legal services in connection with any claims arising under this article, or for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission. When so approved, such fee or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner fixed by the Commission. Upon application of any party in interest, the Commission shall have full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article and may order any attorney or other person receiving the same, to refund to the person paying the same, any portion of any charge for legal services which the Commission may, in its discretion, deem excessive."

Appellant, Paulette S. Schauder, sustained an injury in the course of her employment. She retained the services of physicians and a psychologist to evaluate her injuries. The psychologist testified before the Commission. After the Commission made an award to her, her attorney presented a petition to the Commission seeking payment of his own fee and payment of these other professional fees as per the attached bills. Her signed consent was appended to the petition. The Commission reduced the amount to be paid to these persons. It specified in its order that these reduced fees were "to be paid in lump sums and deducted from the last weeks of compensation." Appellees, the physicians and psychologist in question, entered an appeal to the Circuit Court for Baltimore City.

In the circuit court it was contended "that the Workmen's Compensation Commission has no jurisdiction over the approval and/or reduction of medical fees for evaluation as were submitted in this case at the request of the Workmen's Compensation Commission." That court held:

"Because the statute itself is void as to any specific language regarding the regulation of fees by the Commission as to evaluating physicians only and because the language of the Court of Special Appeals [in *Harris v. Janco Enterprises*, 53 Md.App. 674, 455 A.2d 453 (1983),] indicates that the Commission has no statutory authority to regulate the fees of evaluating physicians, this Court holds that the Workmen's Compensation Commission exceeded its authority in modifying the awards given to the doctors at the hearing level."

An appeal was promptly filed to the Court of Special Appeals. We issued a writ of certiorari, 301 Md. 697, 484 A.2d 640, on our own motion prior to argument in the intermediate appellate court in order that we might address the important public issue here presented.

*Harris v. Janco Enterprises*, 53 Md.App. 674, 455 A.2d 453 (1983), to which the trial judge alluded in his opinion, concerned an application of Art. 101, § 37. Section 37(a)

provides that in addition to the compensation provided for in Art. 101

> "the employer shall promptly provide for an injured employee, for such period as the nature of the injury may require, such medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches, apparatus, artificial hands, arms, feet and legs and other prosthetic appliances as may be required by the Commission . . . ."

Section 37(c) states,

> "All fees and other charges for such treatment and services shall be subject to regulation by the Commission, and shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living."

*Harris* simply held that the fee of "a physician who had examined Harris more than five years after the accident, for the sole purpose of evaluating his disability and testifying at the trial" was not a fee which the employer was obliged to pay under § 37. Judge Adkins was careful to place a footnote for the Court of Special Appeals in that case to the effect that because the issue was not before it that court did "not decide whether the Commission has authority to regulate fees for the testimony of a treating physician, as opposed to fees for the treatment alone." 53 Md.App. at 677, n. 2, 455 A.2d at 455, n. 2.

Section 57 is not in the form of its enactment in 1914. Chapter 404 of the Acts of 1931 added the sentence:

> "Upon application of any party in interest, the Commission shall have full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article and may order any attorney or other person receiving the same, to refund to the person paying the same, any portion of any charge for legal services which the Commission may, in its discretion, deem excessive."

This is the third sentence in what we have quoted from § 57. The report of the Commission to study the Workmen's Compensation Act of Maryland 1930–31 "recommended that some change be made in Section 57 of the Act whereby the State Industrial Accident Commission would have the power to require the return of any excessive portion of a fee that had been charged for legal services without the approval of said Commission." This enactment followed that recommendation.

■ Appellees argue that "the language gives the Commission authority over attorneys and non-attorneys practicing before the Commission, whether or not authorized by law, and also the authority of the Commission to order refunds in cases of abuse or unauthorized charges for fees." It is true that non-lawyers have been known to represent claimants before the Commission. See 23 Op. Att'y Gen. 427 (1938), and the Ninth Report of the Governor's Commission to Study Maryland Workmen's Compensation Laws (1969).[1] The latter report at 2 proposed that in order to represent a claimant or employer and insurer before the Commission one be required to be a member of the Maryland Bar. The General Assembly has enacted no such legislation. The fact that non-lawyers have at some time in the past appeared before the Commission is not dispositive of the issue at hand, however.

■ Many of our cases tell us that the long-standing view of a statute taken by an administrative agency, particularly such view taken "soon after its passage," is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons. However, where the language is plain and unambiguous the judicial construction cannot be

---

1. Note, however, that in *Lukas v. Bar Ass'n of Mont. Co.*, 35 Md.App. 442, 445, 371 A.2d 669, 671–72 (1977), it is stated that the Chairman of the Workmen's Compensation Commission advised Lukas "that under the law of Maryland Lukas could not represent [an individual] before the Commission."

controlled by extraneous considerations, since no custom, however venerable, can nullify the plain meaning and purpose of the statute. *See, e.g., Comptroller v. John C. Louis Co.*, 285 Md. 527, 543–44, 404 A.2d 1045, 1055–56 (1979); *Baltimore Gas & Elec. v. Department*, 284 Md. 216, 220, 395 A.2d 1174, 1176 (1979); *Holy Cross Hosp. v. Health Services*, 283 Md. 677, 685, 393 A.2d 181, 185 (1978). *Congoleum Nairn v. Brown*, 158 Md. 285, 290, 148 A. 220, 222 (1930), states this proposition specifically as to the State Industrial Accident Commission, the predecessor to the Workmen's Compensation Commission.

The Commission filed a brief amicus curiae in this case. It states, "The Commission's long standing administrative practice with regard to fees for evaluative and expert witness services demonstrates the consistent exercise of this regulatory authority under Section 57." Appended to the Commission's brief is its present approved form for a petition for attorney's fee which has in it a specific provision for medical fees. The form of order appended also provides for medical fees. The order specifies, "Said fees to be paid from the final weeks of compensation due in this case." This could not refer to fees for treatment because those would arise under § 37 and are required to be paid by the employer. Hence, there would be no need to specify that such fees "be paid from the final weeks of compensation due in this case." The present form was recommended for adoption by the report of November 19, 1982, of the Governor's Commission on Workmen's Compensation Laws. *Id.* at 8. The prior form was somewhat more lengthy but it also provided relative to physicians' fees. The order with it specified "that the employer and insurer pay the aforesaid fees, in a lump sum, by deducting the same from the terminal weeks of compensation payable to the claimant ...." T. Cornblatt et al., *Workmen's Compensation* (MICPEL—1981) at 82–83.

We do not know how far back this practice of the Commission goes. Confirmation of its existence for more than twenty years is found in *Hoffman v. Liberty Mutual*, 232

Md. 51, 191 A.2d 575 (1963). Attorneys' and physicians' fees which had been awarded there had been placed in escrow. The controversy arose pertaining to "an attorney's fee under Code (1957), Article 101, § 57, as amended by Chapter 64 of the Acts of 1958, and Rule No. 22 of the Rules of Procedure of the Workmen's Compensation Commission ...." 232 Md. at 53, 191 A.2d at 576. It could not have arisen as to a fee payable for treatment under § 37. In the record extract in this Court in that case at E. 3 and E. 9 we find a petition and an amended petition to the Commission which, among other things, seek fees for services "for medical examinations, and reports." At E. 13 we find an award for payment of the physicians' fees with "said sum to be paid in the lump sums from the closing weeks of compensation due the Claimant under the Award of this Commission."

■ Given the proposition that claimants, not employers, are responsible for their attorneys' fees and for the fees of physicians for presentation of their case by way of evaluation or by way of testimony, and the further proposition that many claimants would not have the cash available to pay such fees of either physicians or attorneys, the only practical way for them to be paid by claimants would be out of the last weeks of compensation. Section 49 provides, "Lump-sum payments may also be made by the Commission for the purposes provided for in § 57 of this article."

[4] It is intended that claimants be protected under Art. 101. In *Queen v. Agger,* 287 Md. 342, 412 A.2d 733 (1980), we were concerned with that part of the language in § 57 which states, "No person shall charge or collect any compensation ... for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission." We there held that a health care provider could not collect from a claimant an amount for services rendered in excess of that approved by the Commission. Judge Davidson said for the Court, "The oral contract between the health care provider and the

claimant resulted in charges for services provided uner § 37 which were in excess of the amount approved by the Commission. Such a contract violates the statute and will not be enforced. We shall reverse." 287 Md. at 346–47, 412 A.2d at 735.

*Chanticleer Skyline Rm. v. Greer,* 271 Md. 693, 319 A.2d 802 (1974), concerned attorney's fees. It is significant, however, that Judge Digges said for the Court:

"Through § 57, the Legislature has attempted to formulate a comprehensive mechanism by which the award of an attorney's fee is regulated. This system is desirable because when the practice of requiring each party to pay his own lawyer

'is superimposed upon a closely-calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award.' *A. Larson, The Law of Workmen's Compensation* § 83.11 (1973).

Therefore, this statutory system acts to prohibit the dissipation of an employee's compensation through the payment of excessive legal fees out of the award by giving the Commission the power to regulate when and how much remuneration an attorney who represents a claimant in workmen's compensation litigation is to receive from the employee for legal services rendered to him." 271 Md. at 699–700, 319 A.2d at 805.

Similar language is found in *Feissner v. Prince George's Co.,* 282 Md. 413, 418, 384 A.2d 742, 745–46 (1978).

The fees in question arose in connection with preparation for and presentation of the claimant's case. Without such evaluation or testimony or both a claimant could not effectively present his case. Thus, it would seem that

these fees fit within "compensation for legal services in connection with ... claims arising under this article" appearing in the first sentence which we quoted from § 57. When to this is added the long-standing administrative practice of the Commission and the protective purpose of Art. 101 insofar as claimants are concerned, we conclude that the Commission is vested with power under § 57 to approve such fees.

JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.

McAULIFFE, Judge, dissenting.

I dissent, as I am unable to conclude that the term "legal services" means or embraces medical fees for evaluation or testimony by a physician.

The operative portion of Maryland Code (1957, 1979 Repl. Vol.) Art. 101, § 57 provides:

No person shall charge or collect any compensation for legal services in connection with any claims arising under this article, or for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission.

As the majority concedes, the second clause of this disjunctive sentence cannot apply to the fees of non-treating physicians because § 37 deals only with medical services required for treatment of injury or disease. Therefore, in order to conclude that the legislature has granted to the Workmen's Compensation Commission exclusive original jurisdiction to regulate fees to be paid by claimants to non-treating physicians it is necessary to interpret "legal services" to include the charges of such physicians. I find nothing in the legislative history of § 57 that would support this strained construction, and indeed I read the legislative history developed by the majority to refer only to legal fees, without any reference to physician's fees.

I think it much more likely the legislature was concerned with protecting claimants from excessive attorney's fees, whether kept by attorneys or shared with others.[1]

I find the phrase "compensation for legal services" as used in § 57 to be unambiguous, and to be synonymous with the term "lawyer's fees." That is consistent with the use of the term in the Code of Professional Responsibility. *See, e.g.,* DR 2–106 entitled "Fees for Legal Services" and setting forth factors to be considered in establishing reasonable fees. *See also* DR 2–107(A) prohibiting a lawyer from dividing "a fee for legal services" with another lawyer except under specified conditions.

The majority places considerable emphasis on the existing practice of the Commission to consider the payment of medical bills of non-treating physicians as a part of the petition for attorney's fees. The genesis of that practice is unclear. Conceivably, it may represent nothing more than a convenient consolidation of two separate procedures—the petition for attorney's fees and the petition for a lump sum payment. The petition for attorney's fees is normally filed within a short time after the entry of an award of compensation. At the same time, an attorney wishing to obtain a lump sum payment on behalf of the claimant may file a petition pursuant to Art. 101, § 49.[2] This may have been a common practice among those attorneys who had advanced examining physician's fees, and quite likely was otherwise widely utilized by prudent attorneys who wished to ensure

---

1. In *Brotherhood of Railroad Trainmen v. Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964) the Supreme Court discussed a past railroad union practice of requiring attorneys representing injured trainmen to pay a portion of their fees to the union. Justice Clark, writing for the dissent at 377 U.S. at 9, 84 S.Ct. at 1118, notes the practice was prevalent from 1930 to at least 1959, when it was enjoined by the Supreme Court of Illinois.

2. To permit a claimant to receive funds required for payment of existing bills, or for other legitimate purposes, the Commission may approve immediate payment of all or a portion of awarded benefits. To avoid interruption of current weekly payments the lump sum payment is deducted from the last weeks of prospective compensation.

the prompt payment of experts' fees. I believe it a fair inference that as a matter of convenience attorneys began to include both petitions in a single pleading, and that the form currently approved by the Commission may have evolved from that practice. The rules of the Workmen's Compensation Commission[3] are silent as to any procedure for consideration of petitions for payment of non-treating physician's fees, and with respect to petitions for payment of attorney's fees provide in pertinent part as follows:

A. Petitions. All petitions for attorney's fees in connection with any claims arising under Article 101, Annotated Code of Maryland, shall be submitted to the Commission for approval in proper form and with the original and four copies.

B. Fee Schedule. The Commission, from time to time, will review matters pertaining to attorney's fees and will issue appropriate guidelines which shall be followed by Commissioners approving fees unless cause to the contrary is shown.

C. Contents. The petition for attorney's fee shall set forth in clear, concise terms the services which have been rendered to the claimant, the amount of the fee requested to be approved, and a statement on the petition signed by the claimant indicating the claimant's acknowledgment of the fact that the attorney is making application for allowance of an attorney's fee for the specific services rendred and the amount of the fee.

> \* \* \* \* \* \*

E. Consent. The consent of the claimant to the petition for a fee for legal services is not binding upon the Commission in determining the reasonable value of the services rendered.

> \* \* \* \* \* \*

---

**3.** COMAR 14.09.01.01 *et seq.,* revised effective July 1, 1983.

G. Approval. The Commissioner issuing an award of compensation shall also approve petitions for attorney's fees in each case.

COMAR 14.09.01.21

The Commission has from time to time published a Guide of Medical and Surgical Fees, with the most recent publication bearing an effective date of January 1, 1978.[4] Although this guide contains more than 300 pages, I am unable to find any specific reference to fees to be allowed physicians who are not involved in the treatment of the claimant. Guideline fees established for consultation and report are clearly related to physicians involved in the direct treatment of the claimant, or specifically employed for consultation in connection with that treatment. A separate statement of policy for the approval of attorney's fees, entered by the Commission on October 20, 1970, similarly contains no reference to evaluating physician's fees. If, as the majority insists, the Commission has long held the view that it must approve every evaluating physician's fee, it is difficult to understand why the Commission's guidelines contain no specific reference to those fees.

If the current practice of the Commission actually consists of nothing more than the concurrent consideration of a petition for attorney's fees and a petition for allowance of a lump sum payment, the Commission should not adjust the physician's fees, for the authority to allow payment of compensation in a lump sum does not carry with it the authority to adjust the bills proposed to be paid from that sum. If, as the majority contends, the current practice flows from a belief on the part of the Commission that the term "legal services" encompasses physician's fees, the result should be no different, because the interpretation is too strained. In *Comptroller v. John C. Louis Co.*, 285 Md. 527, 543, 404 A.2d 1045 (1979), quoting in part from

---

**4.** The Guide establishes a unit value for various procedures. This unit value is multiplied by a conversion factor that is periodically changed by the Commission to update the fee schedule.

*Baltimore Gas & Elec. v. Department*, 284 Md. 216, 220, 395 A.2d 1174 (1979), we said:

[E]ven an administrative interpretation ordinarily entitled to "great weight" may be given no weight at all where, for example, statutory language "is plain and unambiguous," because "judicial construction cannot be controlled by extraneous considerations, since no custom however venerable, can nullify the plain meaning and purpose of a statute."

The Commission unquestionably has the authority to permit a lump sum payment from the last weeks of compensation for the purpose of paying the fees of non-treating physicians, and in most cases this will provide a source for the claimant to obtain the expert assistance that may be needed. Whether it is necessary or desirable to grant to the Commission additional authority to completely regulate the amount a non-treating physician may charge a claimant is a question which should be debated before the legislature, and answered by that deliberative body.

I would affirm the decision of the Circuit Court for Baltimore City.

Judge ORTH has authorized me to state that he concurs with the views here expressed.