519 A.2d 1285

**PRINCE GEORGE'S COUNTY, Maryland et al.**

v.

**Beverly FITZHUGH et al.**

**Misc. No. 5, Sept. Term, 1986.**

Court of Appeals of Maryland.

Jan. 28, 1987.

Michael O. Connaughton and Steven M. Gilbert, Deputy Co. Atty. and Associate Co. Atty. (Thomas P. Smith, Co. Atty. and John F. Breads, Jr., Associate Co. Atty., on brief), Upper Marlboro, for appellant.

Samuel Intrater (Neil Intrater, on brief), Washington, D.C., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

On 2 November 1982 the voters of Prince George's County adopted an amendment to § 1013 of the County Charter. The amendment purported to limit the County's waiver of governmental immunity by permitting tort actions against it only in cases "for which its officers, agents, and employees may be liable...." The questions presented in this case are:

"1. Was the amendment made to section 1013 of the Prince George's County Charter on November 2, 1982, valid under the Express Powers Act, Art. 25A, section 5, of the Maryland Code, so that the liability of the County in tort actions brought against it for acts of its officers, agents, and employees is now limited to cases where the officers, agents, and employees would themselves be liable? [and]

"2. If the 1982 amendment to the County Charter is not valid as a restrictive waiver of governmental immunity, should the Court apply section 1013 without the amendment, or should it hold that section 1013 in its entirety is no longer effective?"

These questions have been certified to us by the United States District Court for the District of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act. Cts. and Jud.Proc.Art. §§ 12–601 through 12–609. In its Certification Order, the United States District Court has advised us of the factual context of the case, which we now summarize.

In June 1984, two Prince George's County police officers arrested a man they had seen dealing drugs. As one of the officers was leading the handcuffed culprit away, another man appeared and opened fire on the officers. One of the officers returned the fire; the shot carried beyond its target and struck ten-year-old Mongo Fitzhugh, who was squatting down next to a tree some distance away. Young Fitzhugh died. His parents (appellees herein) sued the County (appellant) in the Circuit Court for Prince George's County.[1] The County removed the case to the United States District Court, apparently on the basis of diversity of citizenship.[2] The jury found that the police officers had acted negligently and that their negligence was the proximate cause of Mongo Fitzhugh's death. It returned verdicts of $125,000 in favor of Mongo's mother and $2,500 in favor of his father. According to the United States District Court judge, "there was absolutely no evidence to sustain a finding that the officers acted in a manner which would defeat their public official immunity." For that reason, the County moved for judgment n.o.v. or a new trial. It argued that since § 1013 of the County Charter waived the County's immunity only in cases in which "its officers, agents and employees may be liable," and since the police officers were unquestionably entitled to public official immunity,

---

1. Although the caption in the certification order indicates otherwise, the County is the only named defendant.

2. The appellees-parents also filed in the federal court an action against the County under 42 U.S.C. § 1983. The two cases were consolidated, but the federal court granted a directed verdict for the County in the § 1983 action. This case presents no issue as to that matter.

and thus not subject to liability, the County was immune from suit. That contention, of course, raised the issue of the validity of the 1982 charter amendment, and produced the questions that the federal court has certified to us, and which we have in full quoted above.

## I. *Waiver of governmental immunity in Prince George's County*

To answer the questions it will be helpful to review the history of waiver of governmental immunity in Prince George's County. That history begins in 1970, when the citizens of the County adopted a charter form of government pursuant to Art. XI-A of the Maryland Constitution. Section 1013 of that initial charter provided, in pertinent part: "The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued." *Bradshaw v. Prince George's County*, 284 Md. 294, 295, 297, 396 A.2d 255, 257, 258 (1979). In *Bradshaw* we held that this

"... sentence of § 1013 is unambiguous in stating that the county may be sued in tort actions 'in the same manner and to the same extent that any private person may be sued.' We think this sentence expresses the county's determination to waive the immunity it would otherwise enjoy at common law for its acts performed in a governmental (as opposed to a proprietary) capacity. By providing that its amenability to suit shall be 'in the same manner and to the same extent' as that of 'any private person,' the county has accepted liability for those torts, but only those torts, for which 'any private person' would be responsible, either directly or derivatively. In other words, we think that the county intended to waive its own immunity, and to subject itself to liability under the same circumstances as if it were a 'private person.' "

284 Md. at 301, 396 A.2d at 259–260.

We went on to hold that § 1013's waiver of the County's governmental immunity did not waive the immunity enjoyed by county public officials with respect to non-malicious

conduct performed within the scope of their authority. We concluded that the county police officers whose actions were before us in *Bradshaw* were entitled to public official immunity and that, since the officers were not liable individually, the county could not be held liable under the doctrine of *respondeat superior.* 284 Md. at 303–305, 396 A.2d at 261–262.

Section 1013 was before us again in *James v. Prince George's County*, 288 Md. 315, 418 A.2d 1173 (1980). By that time the section had been amended (in 1976) to read, in pertinent part: "The County may be sued in actions sounding in tort by actions filed in the courts of the State of Maryland, or in the United States District Court for the District of Maryland. . . ." We decided that this language, like that of the first sentence of the initial version of § 1013, fully waived the County's governmental immunity. 288 Md. at 321, 418 A.2d at 1177. We went on to modify *Bradshaw* by holding that "the language waiving immunity from tort liability set forth in the Prince George's County Charter ... makes the county liable for the negligent conduct of all its employees occurring in the course of their employment, without regard to their status as public officials." 288 Md. at 336, 418 A.2d at 1184 [footnote omitted]. *See also Cox v. Prince George's County*, 296 Md. 162, 168–169, 460 A.2d 1038, 1041 (1983), in which the Court also had before it the 1976 version of § 1013.

Apparently dissatisfied with the outcome of *James,* the county attorney's office drafted an amendment to § 1013, which was adopted in 1982. It is this version of the section that is before us now.[3] It reads [new language emphasized]:

---

**3.** On 4 November 1986 yet another version of § 1013 was adopted. In pertinent part, it reads [new language emphasized]:

"The County may be sued in actions sounding in tort *only for those occurrences* for which its officers, agents, and employees may be liable.... *The sentences, clauses or phrases of this section shall not be severable. If any such sentence, clause or phrase of this section is declared unconstitutional or invalid for any reason, then it*

"The County may be sued in actions sounding in tort *for which its officers, agents, and employees may be liable,* by actions filed in the courts of the State of Maryland, or in the United States District Court for the District of Maryland, with a maximum liability of Two Hundred Fifty Thousand Dollars ($250,000) per individual, per occurrence, to the extent of its liability insurance, whichever may be greater. The County shall carry liability insurance to protect itself, its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program, and nothing herein shall be deemed to be a waiver of any charitable, governmental, or sovereign immunity which any officer, agent, or employee shall otherwise have, by reason of any Statute of the United States of America, public general law of the State of Maryland, or common law as determined by the Courts of Maryland."

As the 1982 amendment makes apparent, its purpose was to override the *James* holding (and to reinstate the *Bradshaw* rule) by limiting the county's waiver of governmental immunity to cases in which county officers, agents, or employees do not possess public official or any other sort of individual immunity. In the case *sub judice* the County argues that this sort of limited waiver is valid, while the appellees contend it is not. We reserved this question in *James.* 288 Md. at 321, n. 6, 418 A.2d at 1177. The answer to it depends on the Express Powers Act, to which we now turn.

## II. *The Express Powers Act*

■ Article XI–A, § 2 of the Constitution provides:

---

is intended and declared by the people of the County that the entire section be declared invalid.

"SECTION 2. BE IT FURTHER ENACTED that the amendment hereby proposed shall be binding on all cases in which a judgment has not been entered as of the date of adoption of the amendment."

At oral argument, counsel for the County conceded that the 1986 amendment is not applicable to this case.

"The General Assembly shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. *Such express powers granted to the Counties ... shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly* [emphasis supplied]."

Pursuant to this directive, the legislature has adopted the Express Powers Act. The portions of that Act relevant to this case are Art. 25A, §§ 4 and 5(CC).[4]

Section 4(a) explains that

"[w]henever any county among the geographical subdivisions of this State ... shall have adopted for itself a charter or form of government under the provisions of ... Article XI–A of the Constitution, it shall be entitled to exercise the following express powers, ... it being the intent of the General Assembly of Maryland ... that the powers herein granted shall be operative in any and all such counties of Maryland as do adopt such charter or form of government."

Section 5(CC), enacted in 1976, deals specifically with waiver of immunity. It authorizes a charter county

"[t]o provide by ordinance or inclusion in the county charter for the waiver of sovereign immunity *so that the county may be sued in tort actions in the same manner*

---

4. In *Bradshaw* we held that § 1013's 1970 waiver of immunity, which was adopted before the enactment of Art. 25A, § 5(CC), was valid under the "general welfare" grant of power contained in Art. 25A, § 5(S). The 1982 version of § 1013 was purportedly adopted to conform to the express authority contained in § 5(CC). *James,* 288 Md. at 320, 418 A.2d at 1176. It is an established canon of statutory construction that where the legislature enacts a specific provision subsequent to a general provision, the former controls. *Lumbermen's Mut. Casualty v. Ins. Comm'r,* 302 Md. 248, 268–269, 487 A.2d 271, 281–282 (1985); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 495, 331 A.2d 55, 61 (1975); *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299, 302 (1949). *See also, Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 507 A.2d 172 (1986).

*and to the same extent that any private person may be sued.* Any chartered county enacting legislation or otherwise waiving sovereign immunity under this subsection shall carry comprehensive liability insurance to protect itself, its agents and its employees. The purchase of this insurance shall be considered as for a public purpose and as a valid public expense. The liability of any county under this subsection may not be greater than $250,000 or the amount of its insurance coverage, whichever is greater, per individual per occurrence. A county which has adopted legislation or otherwise availed itself of the powers contained in this subsection may raise the defense of sovereign immunity to any amount in excess of the limit of its insurance coverage. In any case, the several counties or county availing itself of the privileges of this subsection may not raise the defense of sovereign immunity in any claim of less than $250,000 or the amount of its insurance coverage, whichever is greater [emphasis supplied]."

Since a charter county must operate within the confines of the Express Powers Act, *Ritchmount Partnership v. Board,* 283 Md. 48, 57, 388 A.2d 523, 529 (1978); *Scull v. Montgomery Citizens,* 249 Md. 271, 281–285, 239 A.2d 92, 97–99 (1968); *Ames v. Supervisors of Elections,* 195 Md. 543, 550–551, 74 A.2d 29, 32–33 (1950), we now consider whether § 5(CC) permits Prince George's County to adopt an immunity waiver less broad than that described by the first sentence of the subsection—specifically, the limited waiver the County sought to achieve by its 1982 amendment of § 1013.

III. *The validity of a limited waiver of sovereign immunity—the first certified question*

The thrust of the County's argument is that the Express Powers Act is intended as a broad delegation of powers of self-government to charter counties. *Ritchmount Partnership, supra; Mont. Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969). We have no quarrel with that proposition. But the County goes on to contend that in

light of that intention, § 5(CC) must be read as a flexible authorization, allowing a county to waive governmental immunity, in its discretion, in any degree or manner less than or up to "the same manner and to the same extent that any private person may be sued." To read § 5(CC) as requiring a mandatory "full extent" waiver, says the County, would be contrary to the legislative intent expressed in the subsection, would be unwise public policy, and would raise constitutional questions because an "all or nothing" authorization is in conflict with the provisions of Art. XI–A, § 2 of the Constitution. We disagree with all of these contentions.

To be sure, when the Express Powers Act uses broad and general language, we have construed the grant of power broadly. Thus, in *Klein v. Colonial Pipeline Co.*, 285 Md. 76, 81–82, 400 A.2d 768, 771–772 (1979), we concluded that Art. 25A, § 5(X)'s authorization to "enact local laws ... relating to zoning and planning ..." gives a county "a general power to legislate locally in the field of zoning...." In *Mont. Citizens League v. Greenhalgh, supra*, 253 Md. at 161, 252 A.2d at 247, we said that § 5(S) should be "construed as a broad grant of power to legislate on matters not specifically enumerated in Art. 25A" and in *County Council v. Investors Funding Corp.*, 270 Md. 403, 312 A.2d 225 (1973) we held that that § 5(S) and § 3 conferred the power to legislate in the area of landlord-tenant law, and in derogation of the common law. On the other hand, in *Mont. Co. Bd. of Realtors v. Mont. Co.*, 287 Md. 101, 106–107, 411 A.2d 97, 100 (1980) we indicated that § 5(O)'s grant of power to levy a property tax did not confer a general taxing power on counties. We have recognized that the power of a county "to enact local laws is restricted to matters covered by the express powers granted." *Ames v. Supervisors of Elections, supra*, 195 Md. at 551, 74 A.2d at 32–33.

The question now before us—the power to waive governmental immunity—is, of course, now one specifically enumerated in Art. 25A. Moreover, the language relating to that waiver is not broad and general; it is specific and

unambiguous. We have already noted that in *Bradshaw* we read the phrase "in the same manner and to the same extent that any private person may be sued" as unambiguously waiving governmental immunity in full. 284 Md. at 801, 396 A.2d at 259–260. That identical phrase appears in the first sentence of § 5(CC), and we see no reason to read it differently now than we did in 1979. The language is plain and explicit. When a county waives governmental immunity, it must do it "so that the county may be sued in tort actions in the same manner and to the same extent that any private person may be sued." The remaining portions of § 5(CC) deal, not with the broad waiver of immunity described in the first sentence, but with limitations of liability. The last sentence makes it clear that when a county has waived immunity as authorized by § 5(CC), it may in no case raise the defense of immunity to a claim of less than $250,000 or the amount of its insurance coverage, whichever is greater. There is no ambiguity here, and no hint that when a county has waived immunity it may nevertheless assert immunity if its officers, agents, or employees enjoy some sort of immunity. The first and last sentences of the subsection preclude any such notion.

■ The statutory language being unambiguous, we need not search for legislative history or other aids to interpretation. The plain English of the statute tells us what it means. *See Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 72–73, 517 A.2d 730, 731–732 (1986); *Schauder v. Brager*, 303 Md. 140, 145–146, 492 A.2d 630, 633 (1985); *Travelers Ins. Co. v. Benton*, 278 Md. 542, 545, 365 A.2d 1000, 1003 (1976). If a county elects to waive immunity, it must do so fully and without limitation on the scope of that immunity, although it may to some degree limit the extent of its liability. Prince George's County cannot alter this express power which the legislature has granted it. *Cheeks v. Cedlair Corp.*, 287 Md. 595, 609–610, 415 A.2d 255, 262–263 (1980).

Nor is § 5(CC) an unconstitutional mandate which may not be imposed on a charter county.[5] This grant of power does not require a county to waive governmental immunity. A charter county is free to exercise the power to waive immunity or not as it sees fit. There is nothing mandatory about this. It is only when a county chooses to waive immunity under § 5(CC) that the "all or nothing" requirement of the subsection comes into play. The wisdom of such a provision may be questioned, but that does not make it unconstitutional as in violation of Art. XI–A § 2. *See Supermarkets Gen. Corp. v. State,* 286 Md. 611, 629, 409 A.2d 250, 260 (1979) *appeal dismissed,* 449 U.S. 801, 101 S.Ct. 45, 66 L.Ed.2d 5 (1980); *Bright v. Unsat. C & J. Fund Bd.,* 275 Md. 165, 169, 338 A.2d 248, 251 (1975); *Md. Medical Service v. Carver,* 238 Md. 466, 478, 209 A.2d 582, 588 (1965).

■ We hold that § 5(CC) is constitutional and that its provisions do not permit Prince George's County to enact the restricted waiver of governmental immunity that is contained in the 1982 amendment to § 1013 of the county charter. Consequently, that amendment is invalid; our answer to the first question certified to us by the United States District Court is "no."

IV. *Should the 1982 version of § 1013 be applied without the amendment or is that version no longer effective?—the second certified question.*

The parties have treated this question as though it involves an issue of severability; that is, whether the new language inserted in § 1013 in 1982 can be severed from the section, leaving the remainder of the provision in effect. While we are not convinced that traditional severability analysis applies in this case, that is an issue we need not

---

5. In *James,* we expressed no view as to the validity of § 5(CC), because no one in that case had questioned it. 288 Md. at 320–321 n. 5, 418 A.2d at 1176.

decide. The outcome is the same whether or not we sever the language added in 1982.

If the offending provision is severed, the remainder of § 1013 constitutes a full waiver of governmental immunity. The section would read as it did in 1976, and in *James* we held it had that effect. If the language added in 1982 is not severed, § 1013 is invalid in its entirety, because of its violation of the Express Powers Act. The total invalidity of the 1982 version of § 1013 means that this case is governed by the section as it was adopted in 1976. *See Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A.2d 521 (1975).

■ Accordingly, in answer to the second certified question, we hold that it matters not whether the language added to § 1013 in 1982 is severed or whether the 1982 version is totally invalid. In either case, the 1976 version of § 1013 applies, and the County's governmental immunity is fully waived.

CERTIFIED QUESTIONS ANSWERED AS ABOVE SET FORTH. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEES.

MURPHY, C.J., dissents.

MURPHY, Chief Judge, dissenting.

I agree with the Court that a charter county must operate within the confines of the Express Powers Act, Maryland Code (1981 Repl. Vol.) Art. 25A, § 5. I do not agree, however, that the restricted waiver of governmental immunity intended by the voters in the 1982 amendment to § 1013 of the Prince George's County Charter is invalid as violative of § 5(CC) of the Express Powers Act.

The Home Rule Amendment, Art. XI–A of the Maryland Constitution, allocates powers between the state and those counties which choose to adopt a charter form of government. *Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255 (1980); *Ritchmount Partnership v. Board,* 283 Md. 48, 388 A.2d 523 (1978). The constitutional provision affords char-

ter counties "the power of self-government and freedom from interference, by the Legislature, in the exercise of that power." *City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 311, 255 A.2d 376 (1969). Section 2 of the Home Rule Amendment requires the General Assembly to enact a public general law providing a grant of express powers which "shall not be enlarged or extended" other than by the legislature. In enacting the Express Powers Act to implement the Home Rule Amendment, the General Assembly intended that, within the enumerated powers expressly so granted, charter counties would be permitted to adopt local laws and charter amendments to govern their own affairs. *Scull v. Montgomery Citizens,* 249 Md. 271, 239 A.2d 92 (1968).

Neither the Home Rule Amendment nor the Express Powers Act explicitly requires charter counties to exercise granted powers to the maximum extent permitted by law. The Constitution prohibits only an expansion or enlargement of the powers granted to a charter county by the Express Powers Act. Implicitly, the Home Rule Amendment and the Express Powers Act permit charter counties to limit their exercise of any particular granted power. Such a necessary implication is as much a part of the statute as its express provisions. *See Soper v. Montgomery County,* 294 Md. 331, 335, 449 A.2d 1158 (1982); *Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 643, 446 A.2d 1140 (1982).

It makes no sense to me to hold, as does the majority, that when a charter county elects to waive governmental immunity under § 5(CC), it must do so without limitation or not at all. Such an "all or nothing" interpretation is, in my view, both illogical and unwarranted by the verbiage of § 5(CC); most assuredly, this interpretation will inhibit other charter counties from waiving governmental immunity and particularly so in light of Prince George's County's experience. *See Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979) and *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980).

I would hold that § 5(CC) does not prevent a charter county from adopting an immunity waiver less broad than that described by the first sentence of § 5(CC). I would, therefore, answer the first certified question in the affirmative, i.e., that the voters of Prince George's County, in the 1982 amendment to § 1013, had the power to limit the county's waiver of its governmental immunity.