564 A.2d 95
**PRINCE GEORGE'S COUNTY, MD.**

v.

**Blondine SURRATT, et al.**

**No. 102, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 2, 1989.

Certiorari Granted Dec. 28, 1989.

---

Michael P. DeGeorge (Linowes and Blocher, on the brief), Silver Spring, and Michael O. Connaughton, Upper Marlboro, for appellant.

Elizabeth H. Hamlin (Christmas, Hamlin and Blaszkow, P.C., on the brief), Washington, D.C., for appellees.

Argued before WILNER, ROSALYN B. BELL, and JAMES S. GETTY (Retired, Specially Assigned), JJ.

ROSALYN B. BELL, Judge.

This is an appeal and cross-appeal from the Circuit Court for Prince George's County arising from the death of an infant boy born to appellees, Blondine Surratt (Surratt) and Donald Jackson (Jackson). Surratt and Jackson, who were not married, filed wrongful death and medical malpractice suits against both Surratt's physician and Prince George's County (County), the owner and operator of Prince George's General Hospital. On June 8, 1988, the jury awarded the Estate of Baby Boy Surratt (Estate) $33,739.86, Surratt, the mother of Baby Boy Surratt, $350,000 as a wrongful death claimant, and Jackson, the putative father of Baby Boy Surratt, $150,000. The jury found in favor of the individual physician but against the County.[1]

---

1. The County's liability was apparently based on the negligence of hospital employees who were not made parties to this case.

The County filed a motion requesting judgment notwithstanding the verdict or alternatively a new trial or remittitur. The trial court denied the motion for judgment notwithstanding the verdict but ordered a new trial on the issue of damages unless a remittitur in the amount of $150,000 as to Surratt and a remittitur of $100,000 as to Jackson were accepted. Surratt and Jackson accepted the remittiturs. Both parties have appealed.

The County, appellant and cross-appellee, raises the following issues:

— Are the claims against the County barred, in whole or in part, by governmental immunity?

— Are the damages which may be awarded against the County limited to $250,000 by § 1013 of the Prince George's County Charter?

— Was the evidence legally sufficient to find Jackson to be the father of Baby Boy Surratt and hence, entitle him to damages under the Maryland Wrongful Death Statute?

Appellees/cross-appellants raise the following issues:

— May appellees/cross-appellants appeal the order for remittiturs after they assented to them?

— Did the trial judge abuse his discretion in ordering the remittiturs and refusing to recuse himself?

— Did the trial judge abuse his discretion in refusing to shift the costs of the Health Claim Arbitration proceedings from the party who lost at arbitration to the party who ultimately lost in circuit court?

Because we reverse the decision of the trial court on the issue of governmental immunity, we need not address any of the other issues.[2]

---

**2.** Two of the issues raised by cross-appellant are important issues not previously decided in Maryland which, although we do not reach, we mention briefly. First, neither Maryland courts nor the Legislature has considered whether a plaintiff who has accepted a remittitur can then appeal it as a cross-appellant. This issue deserves attention as it is bound to recur. Several states have legislatively provided for such

## FACTS

Surratt became pregnant in the spring of 1982. She obtained prenatal care from Prince George's County Health Department and was designated as a high-risk pregnancy. In January and February of 1983, physicians at the County Hospital conducted electronic fetal monitoring on four occasions. Some tests indicated fetal compromise and Baby Boy Surratt was surgically delivered on February 8, 1983. Because the infant was seriously ill, he was transferred to the Children's Hospital National Medical Center Newborn Intensive Care Unit. The infant died on February 22, 1983.

Surratt, individually and as personal representative of the Estate, and Jackson submitted their claim to the Health Claims Arbitration Panel. The panel found for the health care providers and Surratt and Jackson duly rejected the award. They then filed suit in the Circuit Court for Prince George's County. The jury found in favor of the Estate, Surratt and Jackson and this appeal followed.

## GOVERNMENTAL IMMUNITY

The County contends now, as it did at trial, that the claims of medical malpractice and wrongful death are barred by governmental immunity. We agree.

---

a cross-appeal. Of those others that have considered the matter, the decisions have gone both ways and are not numerically overwhelming in either direction. A traditional view looks at the judgment as a consent judgment on the part of the plaintiff and, hence, not appealable, even on a cross-appeal. What might be termed a more modern view would permit a cross-appeal of that judgment as a matter of fairness. Those courts point out that allowing a cross-appeal constitutes judicial economy by encouraging the acceptance of the remittitur as opposed to a new trial.

Second, in this case counsel sought the recusal of the trial judge based on his alleged bias against her. Where an attorney raises bias charges against a judge of a highly personal nature, as occurred here, some courts have held that the judge can make that decision to recuse himself or herself. Other jurisdictions including the federal courts have held that the judge must request the hearing of the facts be set before a different judge since the very essence of the bias is its effect upon that judge. We again do not reach this issue.

A brief history of the law regarding governmental immunity in Prince George's County, discussed in detail in *Prince George's County v. Fitzhugh*, 308 Md. 384, 519 A.2d 1285 (1987), is necessary to evaluate the County's argument. In 1970, the County adopted a charter form of government pursuant to Art. XI–A of the Maryland Constitution. Prince George's County, Md., Charter § 1013 (1971), provided that the County waived its governmental immunity and could be sued in tort in the same manner and to the same extent as any private person. *Bradshaw v. Prince George's County*, 284 Md. 294, 301, 396 A.2d 255 (1979).

In May of 1976, the Legislature enacted 1976 Md.Laws ch. 825. That provision became effective as Md.Code Ann. Art. 25A, § 5(CC) (1957, 1976 Repl.Vol.), of the Express Powers Act on July 1, 1976. Section 5(CC) expressly empowered charter counties

"[t]o provide by ordinance or inclusion in the county charter for the waiver of sovereign immunity so that the county may be sued in tort actions in the same manner and to the same extent that any private person may be sued. Any chartered county enacting legislation or otherwise waiving sovereign immunity under this subsection shall carry comprehensive liability insurance to protect itself, its agents and its employees. The purchase of this insurance shall be considered as for a public purpose and as a valid public expense. The liability of any county under this subsection may not be greater than $250,000 or the amount of its insurance coverage, whichever is greater, per individual per occurrence. A county which has adopted legislation or otherwise availed itself of the powers contained in this subsection may raise the defense of sovereign immunity to any amount in excess of the limit of its insurance coverage. In any case, the several counties or any county availing itself of the privileges of this subsection may not raise the defense of sovereign immunity in any claim of less than $250,000 or the

amount of its insurance coverage, whichever is greater." [3]

Also in 1976, Prince George's County amended § 1013 of its Charter to conform with § 5(CC) of the Express Powers Act. In *James v. Prince George's County*, 288 Md. 315, 321, 418 A.2d 1173 (1980), the Court of Appeals held that this version also fully waived the County's immunity.

In 1982, § 1013 was amended again and provided in pertinent part: "The County may be sued in actions sounding in tort for which its officers, agents, and employees may be liable...." In *Fitzhugh*, a case which arose from two questions certified from federal court, the Court of Appeals held that limiting the waiver of immunity to those cases in which county officers, agents or employees do not possess public official or other individual immunity rendered the waiver invalid. *Fitzhugh*, 308 Md. at 394, 519 A.2d 1285. The Court of Appeals reasoned that, since the power of the County "to enact local laws is restricted to matters covered by the express powers granted[,]" *Fitzhugh*, 308 Md. at 392, 519 A.2d 1285, quoting *Ames v. Supervisors of Elections*, 195 Md. 543, 551, 74 A.2d 29 (1950), and § 5(CC) is unambiguous, the County may waive its immunity only if it waives immunity in full. *Fitzhugh*, 308 Md. at 393, 519 A.2d 1285.

In 1986, the County once again amended § 1013. The new § 1013 provides:

"The County may be sued in actions sounding in tort *only for those occurrences* for which its officers, agents, and employees may be liable, by actions filed in the courts of the State of Maryland, or in the United States District

---

**3.** Maryland Code Ann. Art. 25A, § 5(CC) (1957, 1976 Repl.Vol.), was repealed by 1987 Md.Laws ch. 594, and the Local Government Tort Claims Act, Md. Courts and Judicial Proceedings §§ 5–401 *et seq.* (1987), was enacted in its place. The new statute, which took effect on July 1, 1987, is not relevant to the case at bar, since § 3 of 1987 Md.Laws ch. 594 states that "this Act applies only to actions arising from events occurring on or after the effective date of this Act." As noted, the event that gave rise to the instant case occurred in February of 1983.

Court for the District of Maryland, with a maximum liability of Two–Hundred Fifty Thousand Dollars ($250,-000) per individual, per occurrence, to the extent of its insurance coverage, whichever may be greater. The County shall carry liability insurance to protect itself, its officers, agents and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program, and nothing herein shall be deemed to be a waiver of any charitable, governmental or sovereign immunity which any officer, agent, or employee shall otherwise have, by reason of any Statute of the United States of America, public general law of the State of Maryland, or common law as determined by the Courts of the State of Maryland. *The sentences, clauses or phrases of this section shall not be severable. If any such sentence, clause or phrase of this section is declared unconstitutional or invalid for any reason, then it is intended and declared by the people of the County that the entire section be declared invalid.*" (Emphasis indicates new language.)

As with the 1982 amendment, the 1986 § 1013 provides for a limited waiver of immunity by restricting the County's liability to those instances where its officers, agents and employees have no individual immunity. All parties in this appeal concede that, by virtue of *Fitzhugh*, the clause of the 1986 amendment which provides that the County may be sued in tort "only for those occurrences for which its officers, agents and employees may be liable" is invalid. We agree with and accept that mutual concession.

The 1986 version of § 1013 provides that the sentences, phrases and clauses are not severable. It is this nonseverability language, which the Court of Appeals did not analyze in *Fitzhugh*, that is the crux of the case at bar.[4] As we

---

**4.** In the *Fitzhugh* decision, which involved the 1982 version of § 1013, the Court did not address the issue of severability:

indicated, the parties agree that the 1986 amendment to § 1013 is invalid (albeit for different reasons); they sharply disagree on the effect of § 1013's invalidity. The County argues that the invalidity of the limited waiver provision renders § 1013 invalid in its entirety because of the nonseverability clause, with the County regaining full governmental immunity.[5] On the other hand, the Estate, Surratt and Jackson contend that the nonseverability clause is itself invalid because it contradicts the separability provision of the Charter, § 1015 and therefore following the Court of Appeals' logic in *Fitzhugh,* the 1976 version should resume effect. Section 1015 provides:

> "If any article, section, subsection, sentence, clause, or phrase of this Charter shall be held unconstitutional, invalid, or inapplicable to any person or circumstance, then it is intended and declared by the people of the County that all other articles, sections, subsections, sentences, clauses, or phrases of the Charter and their application to all other persons and circumstances shall be separable and shall not be affected by any such decision."

This Court has stated that a Charter is read and construed in the same manner as a statute. *Anderson v. Harford County,* 50 Md.App. 48, 51, 435 A.2d 496 (1981). A well established canon of statutory construction is that when two statutes, one specific and one general, conflict, the specific statute is regarded as an exception to the general statute. *Farmers & Merchants Nat'l Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 63, 507 A.2d 172 (1986); *see also Lumbermen's Mut. Casualty Co. v. Insurance Comm'r of the State of Maryland,* 302 Md. 248,

---

"While we are not convinced that traditional severability analysis applies in this case, that is an issue we need not decide. The outcome is the same whether or not we sever the language added in 1982."
*Fitzhugh,* 308 Md. at 394–95, 519 A.2d 1285.

5. *See* n. 2. Prince George's County, along with other counties, is now subject to the Local Government Tort Claims Act, although it does not apply here.

268–69, 487 A.2d 271 (1985). In the instant case, § 1015 is a general prohibition against nonseverability, while § 1013 provides for one specific instance where provisions may not be severed. Thus, § 1013 is an exception to § 1015 and we hold that the nonseverability clause is valid.[6] Therefore, § 1013 is invalid in its entirety and the County's immunity bars the present challenge.

A further basis for our interpretation of "the entire section" as used in § 1013 is the plain language of the Charter. To interpret the 1986 phrase "the entire section" to mean § 1013 in its entirety, rather than simply the 1986 version of § 1013, is "the most plausible interpretation." *See Walker v. Prince George's County,* 667 F.Supp. 1103, 1105 (D.Md.1987), and *Scinto v. Kollman,* 667 F.Supp. 1106, 1109 (D.Md.1987).[7] Logically, the County did not intend to expand its waiver which would be the result of the reinstatement of the 1976 version of § 1013. The only reason to include the words "then it is intended and declared by the people of the County that the entire section be declared invalid" is to emphasize the desire to expunge § 1013 completely from the Charter if a portion is deemed

---

**6.** Appellee, however, contends that the nonseparability clause is invalid because of the deficiencies in the 1986 referendum. Appellee argues that under the standards of *Anne Arundel County v. McDonough,* 277 Md. 271, 354 A.2d 788 (1976), the question was invalid since it did not accurately and in a nonmisleading manner apprise the voters of the true nature of the legislation upon which they voted. *McDonough,* 277 Md. at 296, 354 A.2d 788. Appellees' argument fails for two reasons. First, the record is devoid of any material relating to the process of passage of the 1986 amendment. The County contends it fully complied with the process. Since the burden to prove otherwise is upon appellees, the absence of such a record must rest with them. Second, the County could not have known how the *Fitzhugh* case would be decided. Consequently, the County could not realistically have told the voters what effect the referendum would have on their governmental immunity; that is, ultimately, a decision for the courts.

**7.** Although these federal cases, which analyze the 1986 amendment to § 1013, are not binding authority, they are consistent with our holding and we find their rationale persuasive.

invalid. No other reason explains the decision to add the nonseverability provision.

Moreover, the timing of the 1986 amendment supports this interpretation. The questions regarding the validity of the 1982 amendment were certified to the Court of Appeals on June 27, 1986. (Record of the *Fitzhugh* case.) The 1986 amendment was proposed by the Prince George's County Council shortly thereafter, and accepted by the voters on November 4, 1986. *Scinto,* 667 F.Supp. at 1109 (accord). The decision in *Fitzhugh* was not filed until January 28, 1987. The obvious conclusion from this sequence of events is that the 1986 amendment was designed to protect the County from a broadening of its waiver of immunity in the event that part of § 1013 was determined to be invalid. To hold otherwise would render the 1986 amendments to § 1013 meaningless.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLANT.[8]

---

**8.** In view of the unique facts of this case and that Prince George's County would otherwise be liable but for the doctrine of governmental immunity, we assess the costs against appellant in the exercise our discretion.